## PAT WILSON v. THE STATE.

### *No. 1228. Decided February 10th, 1897.*

**1. Assault With Intent to Murder—Charge—Aggravated Assault.**

On a trial for assault with intent to murder, where the evidence showed, at least, that, if defendant did not himself provoke and bring on the difficulty, he certainly engaged in a mutual combat and fought willingly; and the court gave a charge on aggravated assault and self-defense; the defendant cannot complain of the charge as to aggravated assault.

**2. Same—Charge—Deadly Weapon.**

Where, on a trial for assault with intent to murder, the court instructed the jury, that, "a deadly weapon was one which, from the manner used, is calculated to produce death or serious bodily injury." Held: A proper definition of a "deadly weapon." And, it is not necessary in such a case, that the weapon must be one not only capable of producing serious bodily harm, but capable of producing death.

**3. Same—The Specific Intent—Ability to Kill.**

While, in assault with intent to murder, the main thing to be established is the specific intent to kill, it is not true that, in every such case, the party must have the ability to kill, though, ordinarily, the weapon used and the manner of its use, are looked to by the jury in order to enable them to determine the purpose and intent with which the assault was made.

**4. Disagreement of Jury as to Charge—Additional Instructions.**

Where there is a disagreement among the jurors as to the charge of the court, it is proper for the court, upon request by the jury, to give them further instructions upon the issue.

**5. New Trial—Newly Discovered Evidence.**

A motion for new trial, for newly discovered evidence, does not show diligence by simply alleging, that the facts were not known to defendant, and could not be discovered by the use of ordinary diligence.

**6. Same—Evidence Immaterial.**

Where the object and purpose of the newly discovered evidence as stated was to prove that defendant's gun, when used by him in the assault, was only loaded with about half a load of powder and less shot than the shells were originally loaded with. Held: The evidence would have been immaterial in view of the testimony adduced, which showed that the shots fired were capable of inflicting death or serious bodily injury.

. APPEAL from the District Court of Grayson. Tried below before Hon. DON A. BLISS.

Appeal from a conviction for assault with intent to murder; penalty, two years' imprisonment in the penitentiary.

The opinion states the material facts in the case.

No brief for appellant.

*Nat P. Jackson* and *Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and given two years in the penitentiary. The prosecutor, B. F. Conn, and his wife, who resided in Houston, Texas, had been on a visit to Dexter, in Cooke County, and, on their way to Houston, were waiting at the depot in Sherman for the train. Conn went to the saloon of Peter Fay, and while there defendant and a young man in a buggy drove up. Conn asked them if they knew Dr. Williams. They replied that they might know about him if they had the drinks. Conn set up the drinks, and they told him that Dr. Williams lived in the southeast part of Sherman. Prosecutor then went back to the depot, and he and his wife went off to some point in town, and after some time he came back to Fay's saloon, and saw the defendant there, and told him he had informed him wrong; that Dr. Williams was dead. A quarrel ensued between the parties, and according to the State's evidence the defendant cursed and abused the prosecutor. Prosecutor told him to wait there until he came back, and he went over to the depot, got his pistol, came back to the saloon, and demanded an apology. Defendant said he was joking, and he and Conn made friends, and Conn treated again. Prosecutor then left, and went back to the depot. A short time after that, defendant armed himself with a gun and came over from the saloon to the depot. The prosecutor went into the waiting room, where his wife was (according to his account), and got his pistol, and came out around the northwest corner of the depot. The defendant was at the southwest corner, and, just as prosecutor turned the corner, defendant threw his gun down on him and fired. The prosecutor then shot at defendant with his pistol. It appears that defendant then ran around the depot, and the prosecutor went into the baggage room. Prosecutor went to the north end of the baggage room and opened the door, and at the same time presented his pistol at the defendant, who was standing a little distance off. The pistol snapped, and defendant raised his gun and shot the prosecutor in the face and neck, the shot scattering from the prosecutor's shoulders to the top of his head. The gun was loaded with small shot. Three of the shot went into the prosecutor's eye, and some went through his jaw and knocked out two of his teeth. At the time the shot was fired, defendant was ten or twelve feet from the pros-

·ecutor.   Witness Peter Fay, for the State testified, that he saw the defendant just before the shooting, come by the saloon, and heard him call out to Conn, and call him a son-of-a-bitch and told him to come over. Conn did not come over.   Defendant shook his gun at Conn when calling to him.   Defendant then went over towards the depot, and shortly afterwards the shooting began.   The testimony of the other State's witnesses substantially concurs with this testimony.   The defendant's witness, Bert Vaden, testified as to the origin of the trouble, in the main, as the State's witnesses.   He states that, when Conn came back from the depot the first time after the altercation had occurred between the prosecutor and defendant, he said to defendant:   "Yes; you know a great deal about Dr. Williams!   He has been dead two months."   The defendant laughed and said, "We have got the drinks just the same." Conn then said, "I believe you are nothing but a bumming son-of-a-.bitch."   Defendant replied that he was no more of a son-of-a-bitch than ·Conn was.   Conn then said, "Wait till I come back," and went away to the depot.   He came back in a few minutes, and drew his pistol on the defendant, and called him a son-of-a-bitch, and told him that he had to take back what he said, which defendant immediately did.   Conn then told him that he had already put seven sons-of-bitches under the sod, and was ready to put another there, and didn't know but what he would do it right then.   "Defendant said, 'I have nothing to shoot with.'   Conn then told him, 'If you have got any shooting irons, get them in sight quick.'   Defendant then said, 'If you will give me a pistol, I will shoot it out with you on any part of the ground.'   They talked awhile, and Conn told defendant that, as he had taken back what he had said, that he would take a drink with him.   Conn then called for the drinks, and we all drank.   Defendant was quite drunk."   The gun with which the shooting was done was offered in evidence.   It was a small, single-barreled shotgun, ordinarily used by small boys for fowling purposes.   The proof showed that it was loaded with No. 6 shot.   This is a summary of the evidence in the case.   The court charged the jury on assault with intent to murder, on aggravated assault, and on self-defense.   From the testimony in our opinion, there was no self-defense in this case.   The least that can be said is that, if the defendant did not himself provoke and bring on the difficulty, he certainly engaged in a mutual combat and fought willingly.   He knew that the prosecutor was armed with a pistol before he so engaged in the difficulty, and he himself was armed with a shotgun.   If the prosecutor, Conn, made an assault on the defendant at the saloon, as testified to by one or two of the witnesses, this might constitute adequate cause to arouse the passion of the defendant.   But the undisputed proof in the case shows that after this alleged assault the parties made friends, and took a drink together, and the matter was dropped, and the shooting occurred some time after this.   However, the court gave a charge on aggravated assault, and certainly appellant has no ground of complaint on this account.

By a bill of exceptions, appellant questions the action of the court in

instructing the jury that "a deadly weapon was one which, from the manner used, is calculated or likely to produce death or serious bodily injury." This, as we understand it, is the definition of a "deadly weapon." See, Skidmore v. State, 43 Texas, 93; Kouns v. State, 3 Tex. Crim. App., 13; 1 Amer. and Eng. Ency. of Law, p. 816. Appellant further criticises this charge, and insists that, as applicable to a case of assault with intent to murder, the weapon, as used, must be one not only capable of producing serious bodily injury, but capable of producing death. In any case, before an assault can be committed there must be the ability to make or commit a battery. It is not true, however, that in every case of assault with intent to murder the party must have the ability to kill. If such were the case, in the nature of things, there would be no assaults with intent to murder, because, when once the specific intent to kill is established, the party having ability would commit the murder. In an assault with intent to murder, the main thing to be established is the specific intent. Ordinarily the weapon used, and the manner of its use, are looked to by the jury in order to enable them to determine the purpose and intent with which the assault was made. As applied to the facts of this case, the weapon and the manner of its use, no doubt, exercised a potent influence with the jury in determining the character of the assault. The evidence showed that the defendant had a shotgun; that he stood some twelve feet from the prosecutor, and, though shooting with small shot (ordinarily called "bird shot"), yet some of them penetrated his eye, injuring his sight, some his neck, and two through the fleshy part of his jaw, knocking out two of his teeth. Now, it is evident, if the defendant had had a front shot at the prosecutor, instead of a side shot, that the shot penetrating his mouth or eye, if striking a vital part, would have been capable of producing death. One witness testified that the weapon, at that distance, and loaded in the manner shown, was a deadly weapon, and capable of taking life. See, Hatton v. State, 31 Tex. Crim. Rep., 586. Appellant complains that the court had no right to give the jury an additional instruction after they had retired to consider their verdict. It appears from the bill of exceptions that the jury were in some disagreement as to the court's charge on aggravated assault, and requested further instructions. We see no error in this procedure, nor is there any error in the charge as given by the court. As stated before, we think it exceedingly doubtful whether aggravated assault is in this case at all. Appellant complains of the action of the court in overruling his motion for a new trial on the ground of his newly-discovered evidence, and in that connection he produces the affidavits of the alleged absent witnesses, showing the newly-discovered testimony. Said affidavits are to the effect that the defendant stated that the gun with which the assault was committed was loaded with about a half load of powder, and less shot than the shells were originally loaded with. Defendant proposed to prove these facts by Jennie Long and Arthur Long. His allegation of diligence in discovering said testi-

mony is as follows: "That the facts said witnesses would testify to were not known to him previous to his trial, and could not be discovered by the use of ordinary diligence." We do not believe this bare statement shows the exercise of any diligence on the subject. Moreover, the court explains the bill on this subject to the effect that appellant used one of the witnesses on the trial. Why appellant did not use some effort to make the discovery of said witness that she knew how said shells were loaded, is not shown. The witnesses merely stated that they did not regard the facts they knew as material, and therefore did not inform appellant of them until after the trial. Appellant does not state that he did not know their materiality, or that he made any investigation that might have led to the discovery of this testimony. However, we do not believe the absent testimony was of a material character, judged by the effect of the said shot, and; as heretofore detailed, even if the shells were loaded as appellant says he could prove by said absent witnesses, they were capable, as fired, of inflicting death or serious bodily injury. We have examined the three special instructions asked by appellant and refused by the court, and we see no error in the refusal of the court to give the same. All contained in them that was the law of the case had already been given in the charge of the court. We find no errors in the record, and the judgment is affirmed.

*Affirmed.*