STANLEY HAWKINS v. THE STATE.

No. 12989.   Delivered February 12, 1930.
Rehearing granted May 28, 1930.
Reported in 29 S. W. (2d) 384.

The opinion states the case.

*J. Mitch Johnson,* of San Saba, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

MARTIN, JUDGE.—Offense, assault to murder; penalty, four years in the penitentiary.

The injured party spent the night preceding the difficulty at appellant's home and ate the noon meal at the same place, leaving shortly after that time with appellant and four other parties.  One of

these was dropped out of the car at the town of San Saba and the five remaining proceeding to the home of the injured party, where the difficulty occurred. Arriving at this place appellant and the injured party left the car together and the two went in the house, from which the noise of a struggle was soon heard by the parties remaining at the auto. Appellant was heard to curse the injured party and accuse him of getting his ring that had been stolen from his house. The injured party testified:

"He whipped me in that first room, and after he whipped me awhile he went and got a screw driver. * * * It was a screw driver with an iron handle—steel. He went over in the room and got it— I had it in my trunk. * * * It was * * * about a foot long, and weighed about two pounds. * * * He then took me in that other room and whipped me with that screw driver and then took me into the kitchen. * * * After he whipped me with the screw driver, he took me out in the yard and pulled my ears with the pliers. * * * Before they took me out of the house they took me in the kitchen and told me that they were going to pour kerosene oil on me, and beat my head, and Stanley got up on a chair and jumped off on me. * * * I saw an axe out at that tree. * * * The defendant struck me in the side with that axe. * * * After that I did not know nothing for about thirty minutes. When I come to, he was pulling my ears with the pliers."

The injured party's testimony further showed that appellant beat him for some two or three hours and finally placed him on a cot and put a bucket of water by his side and departed with his companion, Lee Bob Smith, the two others having previously left shortly after the difficulty started. A pair of pliers with blood on them was found by the Sheriff in the said automobile. An attending physician was called and reached the injured party some two or three hours after the difficulty. He testified in part:

"His head and his face from here up was a solid mass of blood. His eyes were swollen until he could not open them, and I could not open them myself. His lips were swollen so bad that they were turned out. His nose was crushed and just flattened entirely on his face. He had some four teeth, I think, that were perfectly loose, and were so loose that at first I thought his jaw bone was broken. * * * He had one cut on his head about an inch and a half long, just back of the right ear. * * * The wounds that I found on the body of Doss Moor were serious bodily injuries capable of producing death. * * * I treated him for about a week."

We deem it unnecessary to consume space repeating the defensive testimony, which was abundantly sufficient to raise an issue of lack of intent to kill. Such issue, however, was submitted to the jury and found against appellant. We have repeated most of the outstanding incriminating facts as a basis for a discussion of the sufficiency of the evidence, which is vigorously assailed by appellant.

Appellant very earnestly and correctly contends that a specific intent to kill must be shown beyond a reasonable doubt before a conviction is authorized in cases of this character. "If a deadly weapon is used in a deadly manner the inference is almost conclusive that the intent was to kill. If the weapon used was not of itself a deadly weapon, the intent to kill may be established by other facts." Hatton v. State, 31 Tex. Crim. Rep. 586; Branch's P. C., Sec. 1636. "A deadly weapon is one which, from the manner used, is calculated or likely to produce death or serious bodily injury." Wilson v. State, 37 Tex. Crim. Rep. 156; Branch's P. C., Sec. 1638. "The wounds inflicted on the injured party may be looked to in determining whether or not the knife or other weapon used by defendant was a deadly weapon." Walters v. State, 37 Tex. Crim. Rep. 388; Branch's P. C., Sec. 1639.

Giving full credence to the testimony of the injured party, which we are compelled to do under the particular facts of this case, since his version of the affair seems to have been accepted by the jury, we have here a case where the accused used an iron screw driver a foot long, weighing two pounds, and an ordinary chopping axe in his attack upon the injured party. We have wounds which in the opinion of the physician were calculated to produce death and which were of such serious character that it called for the attention of a physician for a week. The evidence may abundantly show that appellant abandoned an intent to kill, if any he ever had, but the real question is whether or not he had such intent at the time he was making the alleged assault. In view of the weapons used and the wounds inflicted and the wanton and brutal character of the assault, we think the finding of a specific intent to kill by the jury had sufficient basis in the evidence.

We have examined all of appellant's complaints and finding no error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

MORROW, Presiding Judge.—Counsel for the appellant very earnestly insists that the essential element of an assault with intent to murder, namely, a specific intent to kill, is wanting in the present record. It is true, as stated in the original opinion, that if the specific intent existed and was accompanied with some assault, the verdict might be sustained though there was a subsequent abandonment of the intent. See Watts v. State, 30 Tex. Cr. App. 533.

The night preceding the assault was spent by Doss Moor at the home of the appellant. The appellant's wife claimed that Moor had insulted her and so told her husband. In the afternoon following, Graves, Dufner, Moor and Hawkins, traveling in an automobile, went to the home of Moor, a distance of some fifteen miles. From the State's witness, Roy Graves, the following appears: Moor entered his house and the appellant followed him. While in the house the appellant hit Moor with his fist. Hawkins was demanding that Moor look for a ring. In many places in the record it appears that Hawkins was claiming that Moor had stolen his ring and was demanding that Moor produce it. The witness saw no weapon used by the appellant save his fist. Dufner and Graves left the scene while Hawkins, Moor and Lee Bob Smith went into Moor's house.

Dufner testified in behalf of the State, and his testimony coincides with that of Graves, showing in addition thereto, that with one of the blows Moor was knocked against the window and the glass broken out. Both of the witnesses indicated that Smith prevented interference by them. Moor testified that after he was beaten in the house the appellant, using his fist, also a screw-driver, took him out to a tree. Describing the encounter there, he said:

"I did not see any weapons there. I saw an axe out at the tree. Hawkins picked up the axe and cut off a limb of the tree."

It appears from the testimony that Moor had named several places at which the ring had been hidden. Among them was a limb of a tree in the yard, which limb was cut off but the ring was not found. In his redirect examination, Moor said:

"Stanley Hawkins struck me in the side with that axe. He struck me in the side with the back of that axe. After that I did not know nothing for about thirty minutes."

There was no testimony that the wound upon Moor could not have been made with the fist; nor is there any cogent testimony indicating that any of the wounds upon his body were made with the

axe or with a heavy screw-driver. Manifestly, none of the witnesses indicated that either an axe or a heavy screw-driver had been used as a deadly weapon. Such instruments are not necessarily deadly weapons but may be deadly weapons in the manner of their use. There was one wound in the back of the head of Moor, of which the doctor said:

"The only place where I found the skin broken through was on the back of his head—back of his ear where the skin was broken loose."

He said further:

"There were no other bruises noticed on any other portion of his body. His face had been beaten severely, and the skin had been lacerated from his face and head, from his neck up."

Lee Bob Smith was called as a witness for the defendant. He heard Hawkins demand a ring and also demand knowledge of the location of the ring. He heard the appellant say: "I will pull your eyes out. I want my ring." He also heard Moor say that his nephew had put the ring in the hollow of an old oak tree. Moor was conducted to the tree. The witness got an axe and cut off the limb indicated but the ring was not found. Moor then indicated that the ring was in a match box in the kitchen. After searching the match box in the kitchen and failing to find the ring, the witness said to Hawkins: "Let's go." Hawkins replied: "I guess I might as well. He's going to let me kill him before he will tell me where the ring is." Moor then said that he wanted to lie down. He was taken to a bed or cot by Hawkins and Smith. Blood was wiped from his face by Hawkins. A drink of water was given him and a bucket of water was placed beside him. He also requested that his mother be told of his plight. Hawkins agreed to tell her and also agreed to get her to come out. The witness Smith said he saw no screw-driver and saw no weapon used except the fist of Hawkins.

The appellant testified and denied the assault save with his fist.

The sheriff arrived and found an axe near a tree from which a limb had been cut. There was no testimony of the finding of a screw-driver such as that mentioned by the accused or of any other description. Touching any reason for not using the axe as a deadly weapon the record is silent. Nor does it reveal why the screw-driver (if one was present) was not used in a deadly manner. No reason is shown by the evidence for leaving Moor alive other than the volition of the accused. No circumstances are revealed making flight necessary or expedient. Hawkins and his companion Smith

were alone in a remote place with ample means at hand to kill Moor, who was practically helpless. The record reveals conduct of the accused for which he richly merits such punishment as the law authorizes. To warrant his punishment, however, the facts must bring his offense within the purview of the specific crime with which he is charged. Punishment for a crime with which he is not charged cannot be sanctioned under our law. Viewing the evidence in its entirety, we are constrained to declare that, in our opinion, the evidence does not warrant the conclusion, beyond a reasonable doubt, that the accused in any part of the assault, acted with the specific intent to kill Doss Moor.

The appellant's motion for rehearing is granted, the order of affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*