## TOM POWELL v. THE STATE.

No. 13305.   Delivered May 7, 1930.
Reported in 28 S. W. (2d) 142.

The opinion states the case.

*George L. Huffman* of Marshall, for appellant.

*John E. Taylor,* Co. Atty. and *Benjamin Woodall,* Asst. Co. Atty., both of Marshall, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to murder; the punishment, confinement in the penitentiary for fifteen years.

The record reflects a difficulty between a negro and a white man, appellant being a negro.   One question is presented for review.   Appellant contends that the evidence is insufficient to support the conviction.

The testimony of Mr. Fannin, the injured party, is in substance as follows: Virgie Williams, a negro woman, lived with appellant.

Appellant and Virgie Williams had had a difficulty. She reported the matter to Mr. Fannin. Appellant came to Mr. Fannin's store armed with a shotgun, stating that he wanted a can of smoking tobacco. As Mr. Fannin went into the store to get the tobacco he stated to appellant that Virgie Williams "had not turned him in for shooting the boy." Appellant replied: "G— d— Virgie and you too." Appellant was talking in an angry manner holding the gun in his hand at the time. Mr. Fannin requested him to leave the store. Appellant replied: "G— d— you." Fannin said: "You get away." Appellant answered: "I don't have to go anywhere." Appellant walked on up toward the store gallery. He "had the gun" on Fannin, who went into his store and got his gun. It was not loaded. Mrs. Fannin told appellant to leave. Appellant said: "G— d— you, I don't have to go anywhere." Fannin attempted to put some shells in his pistol but could not load it. He then got a Winchester, which he succeeded in loading. Mrs. Fannin told him that appellant had the gun on him. He went to the door and shot at appellant. We quote his testimony at this point as follows:

"I then went to the door after I had put this shell in and taken a crack and both shot about the same time; I had my arm up and he shot me under the arm. He shot me with that shotgun. He shot one of my eyes out and shot me in the lung. Some of the shot went in my head and some hit me in the eye and it is out. I shot one time and he shot one time. He had a single barrel shotgun. After that he stood there and loaded his gun when I was trying to get the shell out. The shell was too small for the gun and bursted and I could not get it out. I didn't do nothing then, but my wife followed when I had gone back in the store and my wife put the bar back over the store door and said: 'Negro do you mean to kill me and my husband and little children?' and he said 'G— d— you. Get out of the door or I will shoot you.'"

On cross-examination, the injured party testified as follows:

"Tom and I both shot about the same time. I could not say who shot first and nobody else could. Everybody that heard the shots said it sounded like one shot."

The testimony of Mrs. Fannin was substantially the same as that detailed above.

Appellant testified that he went to Mr. Fannin's store for the purpose of buying some tobacco; that he asked him for a can of tobacco; that Mr. Fannin said: "Virgie said you have been up there raising sand"; that he replied: "No sir, I haven't been raising sand and I

want a can of smoking tobacco. I don't want to hear that, Mr. Fannin"; that an argument ensued; that he went on down the road and Mr. Fannin fired at him; that he returned the fire; that he had three cartridges left after he shot at the injured party.

That appellant had ample opportunity to shoot Mr. Fannin before he entered the store is apparent. From the testimony of the state, appellant and Mr. Fannin fired at each other at about the same time. After the injured party had fired he was unable to reload his gun. Appellant reloaded his gun and could have shot him again if he had desired. He made no attempt to shoot him. We entertain such grave doubt as to the sufficiency of the evidence that we feel that the case should be passed upon by another jury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.