OSCAR SCROGGINS v. THE STATE.

No. 14603.    Delivered January 27, 1932.

The opinion states the case.

*Cunningham & Lipscomb,* of Bonham, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to murder; the punishment, confinement in the penitentiary for two years.

The injured party, V. A. Ellington, drove his automobile at night to a show that was in progress in the country. As he drove into the show grounds, his car came near hitting the father of appellant. According to witnesses for the state, appellant and one Clark ran after the injured party, overtook him, got on the running board of his car and turned off the switch. Appellant commenced striking the injured party on the head with a pistol. Clark attacked him with knucks and a pistol, striking him with both instruments. After thus assaulting Ellington, appellant and his companion, according to the state's version, required Ellington to

crank his car and get back in with them. One of the state's witnesses testified that he heard appellant say just before the car started off: "Let's take the g— d— s— of a b— and throw him in the river." Another witness understood Clark to say that he was going to take the injured party to the river and drown him. Witnesses for the state testified that the parties drove away in the automobile. Nothing more was seen of Ellington, the injured party, until the next morning, when he was discovered in the vicinity of the river. He was muddy and wet and bloody all over. A search revealed that his automobile had been driven off of a bluff and down in a slough, and tracks were found around the car. A physician testified that he had observed some scars around the injured party's temple and on the back of his head. It appears that at the time of the trial the injured party was confined in a hospital for the insane at Wichita Falls. The physician further testified that if the injured party had had a normal mind up until the assault, and received licks on the head, and that it was discovered the next day that his mind was becoming bad, it would be his opinion that the licks were the cause of his mental deterioration. The injured party's mother testified that the injured party began losing his mind after the assault.

Appellant denied that he had anything to do with the assault upon the injured party, and declared that he was at another place on the show grounds. His testimony was given support by that of other witnesses.

Appellant contends that the evidence is insufficient to support the conviction, in that the state failed to prove a spefific intent to kill. It is the rule that if a deadly weapon is used in a deadly manner the inference is almost conclusive that the intent was to kill. Hawkins v. State, 115 Texas Crim. Rep., 163, 29 S. W. (2d) 384. If the weapon was not per se deadly, the intent to kill may be established by other facts. Hawkins v. State, supra. "A deadly weapon is one which, from the manner used, is calculated or likely to produce death or serious bodily injury." Wilson v. State, 37 Texas Crim. Rep., 156, 38 S. W., 1013; Branch's Annotated Penal Code, sec. 1638. "The wounds inflicted on the injured party may be looked to in determining whether or not the knife or other weapon used by defendant was a deadly weapon." Walters v. State, 37 Texas Crim. Rep., 388, 35 S. W., 652; Branch's Annotated Penal Code, sec. 1639.

The pistol and knucks used by appellant and his companion were not described. The pistol was used as a bludgeon. In an attempt to prove serious bodily injury, the state showed, by propounding a hypothetical question, that the wounds received in the assault probably caused the injured party to become insane. If appellant intended to kill the injured party it appears that he would have fired the pistol at him. After the assault with the pistol had been made, according to the state's testimony, appellant required the injured party to crank his automobile and accom-

pany him to the river. While the record shows that appellant stated that he was going to throw him in the river, there is nothing in the testimony to show that it was possible to have drowned the injured party by throwing him in the river. Whether there was enough water in the stream to drown one was not shown. The only testimony showing that the threat to throw Ellington in the river had been carried out was the fact that the injured party was found the next morning in the vicinity of the river with mud on his clothing. The case on its facts is not dissimilar to that of Hawkins v. State, supra, in which it was held that the state failed to show a specific intent to kill. Believing that a specific intent to kill was not shown, it becomes our duty to order a reversal.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.