# DECEMBER 14, 1938

THOMAS BROWN v. THE STATE.

No. 20011.   Delivered December 14, 1938.

The opinion states the case.

*M. S. Munson, Jr.,* of Wharton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is burglary of a private residence in the nighttime with intent to commit murder; the punishment assessed is confinement in the State Penitentiary for a term of ten years.

Appellant's main contention is that the evidence is insufficient to warrant and sustain his conviction. The testimony adduced by the State, briefly stated, shows that on the 8th day of January, 1938, about 9 P. M. appellant, his mother, and one Robert Green, who were negroes, drove up to a filling station owned by Walter Bram and asked for permission to change a tire upon the cement floor of the station. The request was granted. It was a dark night, cold and raining, and he asked Bram for a lantern or flashlight. Bram had no lantern and declined to loan him his only flashlight or to leave the lights on at his garage. After closing his place of business, Bram went to his home and left appellant and Green at work. Being unable to make any progress because it was too dark, they took a piece of old inner tube and set it on fire. Bram saw the fire from his home, a short distance away, and came over and asked them if they intended to burn his filling station. They replied that they did not and stated that they merely wanted a light by which to work. At this juncture, two men in a truck drove up and asked for gasoline. Bram kicked out the fire and went to his gasoline pump and sold the men the desired gasoline. In

the meantime, appellant and Green had started another fire, but Bram again kicked it out.

Up to this point, the State's testimony and that of appellant seems to be in harmony. The only conflict in the same is that of Bram as contrasted with that of appellant.

Bram testified that when he kicked out the fire the second time, appellant became angry, and that he (Bram) remarked that if they had to have light, he would go into the station and turn it on. That when he started into the station appellant followed him with part of an automobile spring which was about twelve inches in length, one inch wide and about three-eighths inch thick and which weighed approximately three-fourths of a pound. That appellant threatened to "beat out his brains" whereupon he, Bram, then ran toward his home, entered it and closed the door behind him, but that appellant pursued him, pushed the door open and entered. That when appellant did so, he caught him and the two clinched and wrestled for some time. That during the struggle, appellant struck him on the shoulders and arms with the automobile spring while his brother, who had been called in by Mrs. Bram, was striking appellant over the head with a shotgun. That during the progress of the fight, appellant's mother and Green came into the house and that Green grabbed the shotgun held by his brother and his brother and Green began to fight for the possession of the gun.

We note that the only wound which the prosecuting witness received was a scratch on his hand. The other injuries were mere bruises.

Bram's brother, Otto, testified that he heard them when they came upon the porch. That he heard the door opened and that after both had entered, he heard the door slam.

Appellant and Green testified that when Bram kicked out the light the second time, he stated that he would go into the garage and get a gun and then there would be no need for a light. That appellant followed him into the garage with part of an automobile spring and while inside, Bram walked up to a truck and put his hand under the cushion of the seat. That appellant told him if he got a gun he would strike him with the spring. That Bram ran out of the garage to the house and appellant followed him, believing that he was after a gun. That the two entered the house about the same time and engaged in the struggle before mentioned. That Bram's brother struck appellant on the head, causing the blood to flow freely. That appellant's mother entered and induced them to stop. That

after the fight was over, Bram and his brother went to the filling station where Bram assisted them in fixing the car by shining the lights of his own car upon theirs and also by helping to start their car after the tire was changed. That in the meanwhile, appellant's old mother remained in Bram's house and washed, mopped and cleaned up the floor.

We are of the opinion that appellant's position is well taken. First, because the evidence fails to show an assault on the part of the appellant with the intent to commit murder at the time he entered Bram's home. The weapon used by him was not, per se, a deadly one, and no serious injury of any kind was inflicted upon Bram from which an inference might be drawn that there was an intent on appellant's part to commit murder. Unless appellant entered the home of Bram with the specific intent to commit murder, he would not be guilty of the offense charged. The burden rested upon the State to show beyond a reasonable doubt that such was his intent.

We are not unmindful of the fact that the State was not required to show a completed offense of an assault with intent to commit murder, but it was required to show beyond a reasonable doubt that such was his intent. In determining the question of intent, we must look to the acts and conduct of the accused in connection with the instrument or means used and the wounds inflicted, if any. If a deadly weapon is used in a deadly manner, the inference is almost conclusive that the intent was to kill. If, however, the weapon was not, per se, a deadly one, nor used in a deadly manner, no serious wounds inflicted, and there are no expressions of intention by the appellant to commit murder, the inference would arise that no such intent existed. In this case we believe the State has failed to prove beyond a reasonable doubt appellant's intention to commit murder at the time he entered Bram's home. This conclusion, in our opinion, finds support in the following authorities. Hare v. State, 80 S. W. (2d) 963; Hawkins v. State, 115 Texas Crim. Rep. 163, 29 S. W. (2d) 384; Jones v. State, 28 S. W. (2d) 146.

The other matters complained of by appellant need not be discussed in view of the disposition we are making of the case.

Having reached the conclusion that the evidence is insufficient to support the conviction, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.