## Bennie Lindsey and Johnnie Lindsey v. The State.

No. 23662. Delivered May 14, 1947.
Rehearing Denied June 11, 1947.

*Bailey & Blum, Andrew C. Buckner, Arnold H. Krichamer* and *King C. Haynie,* all of Houston for appellants.

*A. C. Winborn,* Criminal District Attorney, *Kellis Daniel* and *E. T. Branch,* Assistant Criminal District Attorneys, all of Houston, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appellants were convicted of murder with malice. Bennie Lindsey's punishment was assessed at twenty years and Johnnie Lindsey's punishment was assessed at five years confinement in the state penitentiary.

There are no bills of exception in the record nor any objection to the court's charge. Their chief contention is that the evidence is insufficient to sustain their conviction of murder with malice

because the evidence fails to show a specific intent to kill. The intent of the offending party is generally a question of fact to be determined by the jury. In determining the question of intent, we must look to the acts, words, and conduct of the accused in connection with the instrument or means used and the wounds inflicted. If a deadly weapon is used in a deadly manner, the inference is usually conclusive that the intent was to kill. If, however, the weapon was not, per se, a deadly one, nor used in a manner calculated to produce death, no serious injuries inflicted, and there are no expressions of an intent to kill, the inference would be that no such intent existed. Now, what are the facts in this case?

The record reflects that about 8:00 P. M. on the 4th day of July, 1946, two women drove up in the driveway of the Ranch Service Station in the City of Houston in Harris County. Without explaining his purpose to anyone, Bennie Lindsey came to the filling station and took the keys out of the car driven by the two women. As a result, the car could not be driven away. Blackie Cloud, who was employed at the filling station, requested appellant to drive the car out of the driveway or give the keys to the women so they might do so. This precipitated a heated argument between the two men and resulted in a fist fight in which Lindsey came out second best. This evidently engendered considerable animosity against Cloud because Bennie went to the taxicab station where he was employed and solicited a number of cab drivers including his brother, Johnnie, to go with him to the filling station to straighten out the misunderstanding and unpleasantness. Appellants and another cab driver proceeded in a cab to the Ranch Service Station, but when they reached a point about 60 yards away, they stopped a short while and then proceeded to the Service Station.

Appellants entered the filling station. Bennie struck Cloud with his fist while Johnnie struck him on the head with a 45 caliber pistol. They knocked Cloud down and while he lay helpless on the floor, Bennie kicked him with his feet with shoes on. Claude E. Livingston, who was present at the time, testified that Bennie Lindsey kicked Cloud from seven to fifteen times and then walked away leaving him lying helpless and unconscious on the floor. He described the condition of the injured party as follows: "His face was indistinguishable. You couldn't tell his eyes from his nose or mouth. There were hunks of flesh on the floor. His whole body was lying in blood. Blood was flowing out of his ears, nose and mouth." Mr. Robert B. Carroway described the injured party's condition as follows: "He

had many bruises about the face. He had a T shaped cut over the left temple about four inches long. He had bad bruises under each eye, the one under the right was bursted. The man wasn't talking rational. He'd start out with a sentence and his words would become somewhat mumbled."

Dr. Crapitto, the County Health Officer who performed an autopsy on the body of Blackie Cloud testified as follows: "I found some brain injuries. There were several lacerations of the scalp; * * * and there were several lacerations of the forehead; one on the left of the forehead about two and a half or three inches in length. Both eyelids were swollen. * * * sutured wounds of the scalp, the result of operative procedure, and there were four trephine holes or openings in the skull to relieve pressure, which was done at one of the hospitals. * * * the cause of his death was edema of the brain or swelling of the brain. There was pressure on the brain stem as a result of swelling of the tissues, usually resulting from force. * * * there were several small hemorrhages of the brain, but the most marked trouble was the swelling of the brain. It must have been some heavy force that produced this type of injury."

Appellants took the witness stand and denied that Bennie kicked and stamped the deceased with his feet; they denied that Johnnie had a pistol and struck the deceased with it. Johnnie Lindsey further testified, "My brother and I did not leave the taxicab office and go out there for the sole purpose of beating that man up, and killing him." If it was not their sole purpose, it would justify the conclusion that it was a part of their sole purpose to do so. Giving to the language the logical construction, it means that they went there to beat him up and kill him, but that it was not the sole or only purpose; that they had some other additional purpose, not disclosed. Consequently, we have here an expression of their intent, which together with the means used and the wounds inflicted, were sufficient from which the jury was justified in arriving at the intent of the defendants to kill the deceased at the time of the commission of the offense.

Appellants cite us to the following authorities as supporting their contention, to-wit: Powell v. State, 28 S. W. (2d) 142, Hawkins v. State, 29 S. W. (2d) 384, McCoy v. State, 102 S. W. (2d) 206, Sofge v. State, 111 S. W. (2d) 720, Brown v. State, 122 S. W. (2d) 308, McDonough v. State, 178 S. W. (2d) 863. We have examined the cases cited, and have reached the

conclusion that they are distinguishable from the instant case on the facts. In the case of Powell v. State, supra, the defendant went to the store of Mr. Fannin to purchase a can of smoking tobacco. While there an argument arose between Fannin and the defendant, Powell. Fannin ordered him to leave to which he replied that he did not have to go anywhere, whereupon, Fannin got a Winchester and shot at the defendant who in turn shot at Fannin. He then reloaded his gun and could have shot Fannin again if he had so desired, but he didn't. Fannin had no more shells for his Winchester. It is true that in that case a deadly weapon was used, yet it appears that he might have used it in self-defense since he did not shoot Fannin any more although he could have killed Fannin had he desired to do so. The fact that he did not shoot again was a circumstance negativing the intent to kill.

The opinion in the case of McCoy v. State, supra, is not applicable here. That case was reversed because the court failed to instruct the jury that an essential element of an assault with intent to murder is the specific intent to kill. In the instant case, we have no such question before us.

In the case of Brown v. State, supra, and the case of McDonough v. State, supra, the facts are not at all as strong as in the instant case. In those cases there is not any expression by the defendant of his intent or purpose while in the instant case, we do have an expression from Johnnie Lindsey which when given a reasonable construction shows that a part of their purpose in going to the service station was to beat up and kill Cloud, which, together with the means, the manner of the assault and the serious wounds inflicted, was sufficient as a basis for the jury's conclusion of their intent. They were acting together in the commission of the offense, which constituted them principals.

Under all the facts of this case as reflected by the record, we would not be justified in reversing this case on the question presented. To do so would be substituting our conclusion for that of the jury whose province it is to decide all issues of fact. In support of our conclusion, we refer to the following authorities: Jones v. State, 110 S. W. (2d) 571, Tindall v. State, 172 S. W. (2d) 328.

From what we have said, it follows that the judgment of the trial court should be affirmed and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellants have filed a motion for rehearing in which they discuss at length the logic of the opinion treating the testimony of Johnnie Lindsey, wherein he said that he and his brother did not go to the filling station for the sole purpose of beating up and killing the deceased.

Whether or not this testimony was over-emphasized in the opinion is immaterial. The facts reviewed show a most brutal beating by the appellant Bennie Lindsey, while Johnnie, with his gun, kept a witness from interfering to aid his friend, the deceased. The entire circumstances of the killing were considered in arriving at a conclusion.

The reasonableness of the defensive testimony was before the jury which had a right to find, under the instruction of the court that they did intend to kill the deceased. The serious wounds on the head of their victim, inflicted by the shoe heel of Bennie Lindsey, were of an extent and inflicted under circumstances that thoroughly justified the jury's verdict. The wounds on the face were visible to both of the appellants and were of an extent to materially support the jury's finding.

We said in Ammann v. State, 165 S. W. (2d) 744, that "Such intent may be inferred when the instrument used in committing the assault is a deadly weapon. If the weapon used is not deadly, the intent to kill on the part of the accused may be ascertained from and shown by the surrounding facts and circumstances." See Branch's P. C., Section 1636, and authorities there discussed.

Added to the usual circumstances as described in the original opinion, both appellants were former prize fighters. They were in their thirties. Each weighed about a hundred and eighty pounds and they were well muscled, healthy men, while the deceased was a fat man and in his fifties. The physical advantage of the assailants may also be considered.

We think the conclusion reached in the original opinion was correct. The motion for rehearing is overruled.