ACCEPTED
04-15-00421-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/19/2015 3:05:59 PM
KEITH HOTTLE
CLERK

## NOS. 04-15-00420-CR & 04-15-00421-CR

### IN THE COURT OF APPEALS

### FOR THE

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/19/15 3:05:59 PM
KEITH E. HOTTLE
Clerk

### FOURTH COURT OF APPEALS DISTRICT

### OF TEXAS

### SAN ANTONIO, TEXAS

**JOSE LUIS GARZA-RAMIREZ,**
**Appellant**

**VS.**

**THE STATE OF TEXAS,**
**Appellee**

**Trial Cause Nos. 478490 & 478491**
**Appeal from County Court-at-Law No. 13**
**Bexar County, Texas**
**Hon. Crystal Chandler, Presiding**

### BRIEF FOR APPELLANT

**MICHAEL D. ROBBINS**
**Assistant Public Defender**
**Paul Elizondo Tower**
**101 W. Nueva St., Suite 370**
**San Antonio, Texas 78205**
**(210) 335-0701**
**FAX (210) 335-0707**
**mrobbins@bexar.org**
**Bar No. 16984600**

**ORAL ARGUMENT**
**NOT REQUESTED**

**ATTORNEY FOR**
**APPELLANT**

i

## Identity of Parties and Counsel

Pursuant to TEX. R. APP. P. 38.1(a) (West 2015), the parties to this suit are as follows:

(1)     **JOSE LUIS GARZA-RAMIREZ** is the appellant and was the defendant in trial court.

(2)     The **STATE OF TEXAS**, by and through the Bexar County District Attorney's Office, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205, is the appellee and prosecuted this case in the trial court.

The trial attorneys were as follows:

(1)     Jose Luis Garza-Ramirez was represented by **MICHAEL ORBELO,** 430 Isom Rd., Suite 123, San Antonio, Texas 78216.

(2)     The State of Texas was represented by **NICHOLAS LAHOOD,** District Attorney, and **EDWARD APPLEBAUM** and **RAMSEY DALLAM,** Assistant District Attorneys, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205.

The appellate attorneys are as follows:

(1)     Jose Luis Garza-Ramirez is represented by **MICHAEL D. ROBBINS**, Assistant Public Defender, Paul Elizondo Tower, 101 W. Nueva St., Suite 370, San Antonio, Texas 78205.

(2)    The State of Texas is represented by the **BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE**, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205.

The trial judge was **HON. CRYSTAL CHANDLER,** County Court-at-Law No. 13, Cadena-Reeves Justice Center, 300 Dolorosa St., 3rd Floor, San Antonio, Texas 78205.

# Table of Contents

                                                                                                                                 Page

Identity of Parties and Counsel . . . . . . . . . ii

Table of Contents . . . . . . . . . . iv

Table of Authorities . . . . . . . . . vi

A Note Regarding Record References . . . . . . . viii

Statement Regarding Oral Argument . . . . . . . viii

Statement of the Case . . . . . . . . . 1

Issues Presented . . . . . . . . . . 3

### APPELLANT'S FIRST POINT OF ERROR
The trial court erred when it sustained the State's objection and denied Mr. Garza-Ramirez's request to present Saul Anguiano's out-of-court statement to his sister, because the statement was not hearsay and was relevant to the defense. (RR 3, 48).

### APPELLANT'S SECOND POINT OF ERROR
The trial court erred when it sustained the State's objection to testimony from Nicole Casimiro that she was bi-polar and not on medication, because the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. (RR 3, 57-58).

### APPELLANT'S THIRD POINT OF ERROR
The trial court erred when it denied Mr. Garza-Ramirez's request for a jury instruction of the defense of consent, because the evidence raised a fact issue as to consent. (RR 3, 119).

Statement of Facts . . . . . . . . . . 4

Summary of the Argument . . . . . . . . . 13

Argument . . . . . . . . . . . 15

    Appellant's First Point of Error (Restated) . . . . . 15

    Appellant's Second Point of Error (Restated) . . . . 19

    Appellant's Third Point of Error (Restated) . . . . . 24

Conclusion and Prayer . . . . . . . . . 28

Word Count Certificate of Compliance . . . . . . 29

Certificate of Service. . . . . . . . . 29

# **Table of Authorities**

Page

### Statutes

TEX. PENAL CODE § 1.07 (West 2011) . . . . . . . 24

TEX. PENAL CODE § 22.01 (West 2011) . . . . . . 1

TEX. PENAL CODE § 22.06 (West 2011) . . . . . .24,27

TEX. PENAL CODE § 38.03 (West 2011) . . . . . . 1

### Rules

TEX. R. APP. P. 9.4 (West 2015). . . . . . . . 29

TEX. R. APP. P. 38.1 (West 2015) . . . . . . . ii

TEX. R. APP. P. 44.2 (West 2015) . . . . . . .18,24

TEX. R. EVID. 103 (West 2015) . . . . . . . . 17

TEX. R. EVID. 401 (West 2015) . . . . . . . . .18,22

TEX. R. EVID. 402 (West 2015) . . . . . . . . 17

TEX. R. EVID. 403 (West 2015) . . . . . . . . .13,21

TEX. R. EVID. 801 (West 2015) . . . . . . . . 17

TEX. R. EVID. 802 (West 2015) . . . . . . . . 17

### Cases

*Agbor v. State*, No. 02-12-00401-CR, 2013 Tex. App. LEXIS 5430, 3012 WL
1830679 (Tex. App. – Fort Worth May 2, 2013, no pet.)(mem. op., not
designated for publication) . . . . . . . 27

*Almanza v. State*, 724 S.W.2d 805 (Tex. Crim. App. 1986) . . . 27

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1996) . . . 17

*Feldman v. State*, 71 S.W.3d 738 (Tex. Crim. App. 2002) . . . 22

*Granger v. State*, 3 S.W.3d 36 (Tex. Crim. App. 1999) . . . . 27

*Guidry v. State*, 9 S.W.3d 133 (Tex. Crim. App. 1999) . . . . 17

*Martinez v. State*, 327 S.W.3d 727 (Tex. Crim. App. 2010) . . . 16

*Martinez v. State*, 186 S.W.3d 59 (Tex. App. – Houston [1st Dist.] 2005, pet. ref'd) . . . . . . . . . . . . . 17

*Martinez v. State*, 22 S.W.3d 504 (Tex. Crim. App. 2000) . . . 17

*Miller v. State*, 312 S.W.3d 209 (Tex. App. – Houston [14th Dist.] 2010, pet. ref'd) . . . . . . . . . . . . . 27

*Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002) . . . 18

*Smith v. State*, 355 S.W.3d 138 (Tex. App. – Houston [1st Dist.] 2011, pet. ref'd) . . . . . . . . . . . . . 21,22

*Solomon v. State*, 49 S.W.3d 356 (Tex. Crim. App. 2001) . . . 19

*Stairhime v. State*, 463 S.W.3d 902 (Tex. Crim. App. 2015) . . . 25

*State v. Mechler*, 153 S.W.3d 435 (Tex. Crim. App. 2005) . . 21,22

*Weatherred v. State*, 15 S.W.3d 540 (Tex. Crim. App. 2000) . . . 16

*Woodfox v. State*, 742 S.W.2d 408 (Tex. Crim. App. 1985) . . . 27

## A Note Regarding Record References

This appeal embraces two interrelated cause numbers which were tried together. There are four volumes in the reporter's record of the trial. In this brief, references to these volumes will be thus: (RR 2, ___). There are two separate clerk's records. References to the clerk's record will be thus: (CR 478490, ___) and (CR 478491, ___). The names of the testifying witnesses will appear in **bold type** at the beginning of the summary of their testimony.

## Statement Regarding Oral Argument

The issues raised in this appeal may be determined from the record and legal authorities alone. For that reason, the undersigned counsel does not request oral argument, but will present oral argument if it is requested by the State and granted by the Court.

TO THE COURT OF APPEALS FOR THE FOURTH COURT OF APPEALS DISTRICT OF TEXAS:

This brief is filed on behalf of Appellant, Jose Luis Garza-Ramirez, by Michael D. Robbins, Assistant Public Defender.

## Statement of the Case

Appellant Jose Luis Garza-Ramirez was charged by information in Cause No. 478490 with the offense of assault – bodily injury.[1] (CR 478490, 8). He was charged by information in Cause No. 478491 with the offense of resisting arrest.[2] (CR, 478491, 8). The two cases were consolidated and tried together. (RR 2, 3). A jury was sworn (RR 2, 83), and Mr. Garza-Ramirez pleaded not guilty to each charge. (RR 3, 14). Following evidence and arguments of counsel, the jury found Mr. Garza-Ramirez guilty of assault – bodily injury (CR, 478490, 33; RR 3, 148) and guilty of resisting arrest. (CR 478491, 32; RR 3, 148). Mr. Garza-Ramirez elected that the court assess punishment in case of conviction. (CR 478490, 34; CR 478491, 26). The court assessed fine of $1,500 ($1,300 probated) and a jail sentence of one year, probated for two years, in Cause No. 478490  (CR 478490, 35-36; RR 3, 153-154), and no fine and a jail sentence of one year, probated for two years, in Cause No. 478491. (CR 478491, 33-34; RR 3, 153-154). The two

---

[1] A class-A misdemeanor, in violation of TEX. PENAL CODE § 22.01(a)(1) (West 2011).
[2] A class-A misdemeanor, in violation of TEX. PENAL CODE § 38.03(a) (West 2011).

1

sentences were ordered to run concurrently. (RR 3, 153). The court certified that these are not plea bargained cases and that Mr. Garza-Ramirez has the right of appeal. (CR 478490, 37; CR 478491, 35). Mr. Garza-Ramirez timely filed a notice of appeal in each case. (CR 4778490, 40; CR 478491, 38). This appeal follows.

## Issues Presented

## Appellant's First Point of Error

The trial court erred when it sustained the State's objection and denied Mr. Garza-Ramirez's request to present Saul Anguiano's out-of-court statement to his sister, because the statement was not hearsay and was relevant to the defense. (RR 3, 48).

## Appellant's Second Point of Error

The trial court erred when it sustained the State's objections to testimony from Nicole Casimiro that she was bi-polar and not on medication, because the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. (RR 3, 57-58).

## Appellant's Third Point of Error

The trial court erred when it denied Mr. Garza-Ramirez's request for a jury instruction on the defense of consent, because the evidence raised a fact issue as to consent. (RR 3, 119).

**Police respond to a domestic disturbance call.**

**Nicole Casimiro** was the complainant in this case, and Jose Garza-Ramirez was her boyfriend. They lived together, but were not married. (RR 3, 19). They resided at 7650 Highway 90 at the time of the trial, and on December 16, 2014, the day of the incident giving rise to these cases. On the day in question, Ms. Casimiro was home with Mr. Garza-Ramirez, her three children, her brother and sister-in-law, and their three children. (RR 3, 20). The police were called for an argument between Mr. Garza-Ramirez and Ms. Casimiro's brother Saul Anguiano.[4] The argument was about money. Jose had been out with his family and had been drinking. Mr. Anguiano called the police. Ms. Casimiro testified that she told the police that she hit Jose first, and that he put his hand in her face to quiet her. (RR 3, 21). She could smell alcohol on Mr. Garza-Ramirez, and they started arguing in the kitchen. There were three police officers initially. (RR 3, 22). The children were in the back room watching TV. (RR 3, 23).

Mr. Garza-Ramirez supported the children and assisted Ms. Casimiro with the rent and bills. The two of them were yelling at each other when the police arrived. The officers walked in, charged at Mr. Garza-Ramirez, grabbed him, and

---

[3] This brief will summarize the testimony as given at trial. Appellant does not concede that the State's evidence is true.

[4] Mr. Anguiano's full name is given at (RR 3, 93).

threw him to the floor. Mr. Garza-Ramirez had a dislocated arm. He was angry at the officers and told them they were hurting him. (RR 3, 24). Mr. Casimiro knew the men who entered were police officers because of their uniforms, but she could not recall whether they identified themselves as police. She told the police that Mr. Garza-Ramirez put his hand in her face to quiet her. She told them that she hit him first and that he hit her brother as well. She told the officers that she was sore. (RR 3, 25).

Ms. Casimiro was hurt, but she considered it to be a mutual-combat fight between the three of them. (RR 3, 26). She admitted that she wrote in her written statement that her neck was sore and that Mr. Garza-Ramirez punched her when he was swinging his arms around. (RR 3, 28; RR 4, SX1). She told the officers that she and Mr. Garza-Ramirez were arguing and that he was getting physically aggressive. (RR 3, 29) She told the officers that Mr. Garza-Ramirez forced his way through an unlocked door, entered the kitchen, and pinned her against the stove. Although her statement said that he pushed her head against the smoke vent, she actually told the officer that she hit her head during the altercation when she, Mr. Garza-Ramirez, and her brother were pushing at each other. (RR 3, 30).

She told the officers that her brother was in the middle of the melee, which was the reason that Mr. Garza-Ramirez's blood was on her brother's shirt. (RR 3, 30-31). She told the offices that she struck the first blow, but they did not write it

that way. She was so overwhelmed that she did not have the chance to finish her written statement or to use the right words. Her cut lip was a result of Mr. Garza-Ramirez losing his balance due to intoxication. (RR 3, 31). She admitted that she was backed into a corner during the fight and that she hit the counter. (RR 3, 32).

**Ms. Casimiro's testimony on friendly cross-examination.**

Ms. Casimiro calls Mr. Garza-Ramirez "JoJo." He was not in the house at first, but she called him to come over. (RR 3, 35). She wanted him to bring $60 for one of the children's school expenses. She met him at the front door and he gave her the money. He was angry. They got into a shouting match. (RR 3, 36). She went into to house to distance herself from him. JoJo wanted to come in, but her brother Saul slammed the door in his face. Since it was actually JoJo's house, he had the right to enter. JoJo followed Ms. Casimiro into the kitchen. (RR 3, 37). It began as a yelling match and got physical. Saul intervened. (RR 3, 38). It was an "all-out mutual fight, so everybody was pushing each other." (RR 3, 39).

It seemed to take a while for the police to get there. Ms. Casimiro hit JoJo a couple of times with a closed fist. When the police arrived, they manhandled JoJo. (RR 3, 40). He had a pre-existing work-related injury, which caused him to be cautious. He had a bad shoulder, and told the officers to be careful with him. (RR 3, 41). Mr. Casimiro witnessed the takedown. One officer grabbed him on the right side, where he had the bad shoulder, and two grabbed him on the left side. The

officers dragged him into the living room and began to knee him. (RR 3, 42). They were pulling his arm and accusing him of resisting. He was actually yelling at them about his shoulder. He told them he would give them his arm. (RR 3, 43). Saul intensified an already bad situation by cursing. (RR 3, 44).

Ms. Casismiro did not tell any police officer that JoJo struck her with a closed fist or put his hand in her face, although he did put his hand in her face to shut her up. This did not cause her any injury. (RR 3, 45). A female officer talked to her later and asked her if she wanted a protective order. That officer was concerned about Ms. Casimiro's personal safety, although Ms. Casimiro did not express any concerns herself. She did not feel she was in danger. (RR 3, 49). She intended to put additional things in her written statement, which was not completed. (RR 3, 50). She felt rushed because she had to sign three different documents at the same time. (RR 3, 51). The other documents concerned refusing medical care and shelter. (RR 3, 52).

**The police testimony.**

**Robert Gaitan** was a patrol officer and field training officer ("FTO") with the San Antonio Police Department ("SAPD"). (RR 3, 61). On December 16, 2014, he received a call to the Lackland Mobile Home and RV Park.[5] (RR 3, 62). The family disturbance call came in at 10:50 PM. (RR 3, 63). He was the first officer to

---

[5] Located at 7650 Highway 90. (RR 3, 65).

arrive, but others were on the way. He waited for them, for safety reasons. (RR 3, 64). Officers Figueroa and Tijerina arrived as backup. They all walked toward the trailer. A man came out and told them that people were fighting inside. (R 3, 65). The man was the brother of the victim, and he allowed the officers to go inside. The officers heard Mr. Garza-Ramirez inside the trailer yelling. (RR 3, 66).

The officers saw Mr. Garza-Ramirez and his spouse in the kitchen. Mr. Garza-Ramirez was standing in front of the sink. (RR 3, 67). Officer Gaitan saw a steak knife on the counter. He wanted to prevent movement toward the knife, which was within Mr. Garza-Ramirez's reach. (RR 3, 68). The three officers gave Mr. Garza-Ramirez multiple commands to come with them, but he did not comply. There was a struggle. They all went to the ground. Mr. Garza-Ramirez was resisting, but the officers were able to arrest him. "There was some physical force used to apprehend him." Officer Gaitan told him multiple times to put his hands behind his back, but he did not do so. After several minutes, Mr. Garza-Ramirez complied. (RR 3, 69).

It took all three officers to restrain Mr. Garza-Ramirez. He cursed at them and took a fighting stance. (RR 3, 70). A COBAN recording[6] was made of part of the incident (RR 3, 72), and was admitted into evidence. (RR 3, 74, RR 4, SX10).

---

[6] COBAN is the corporate name of a company which manufactures in-car video and body cameras for law enforcement agencies. *See* http://www.cobantech.com/www/ (last accessed on November 16, 2015).

The video runs an hour and 26 minutes in its entirety. Three minutes of it, from 0:09:30 until 0:12:30, was played for the jury at this time. (RR 3, 76-77). The video itself is rather static, showing a trailer as seen from the parked patrol car. It is the audio track which captures the arrest. The vulgar language on the audio track came from Mr. Garza-Ramirez. At one point, Mr. Garza-Ramirez can be heard saying, "Vamos. Vamos." This is slang of "Let's go." (RR 3, 76-77; RR 4, SX10 at 0:10:16).

After Mr. Garza-Ramirez was cuffed, Officer Gaitain radioed for a supervisor and EMS. (RR 3, 78). The screaming on the audio portion of the recording occurred when the officers tried to arrest Mr. Garza-Ramirez. His brother-in-law can be heard telling him to behave. The officers had to punch Mr. Garza-Ramirez and use pressure points to subdue him. (RR 3, 78-79). Both Mr. Garza-Ramirez and his brother-in-law had blood on them when the police arrived. The force used by the police caused additional bleeding and an abrasion or two. It took three officers to handcuff Mr. Garza-Ramirez. (RR 3, 81). All three officers wore police uniforms. (RR 3, 84).

**Hector Figueroa** was a rookie SAPD patrol officer on December 16, 2014, riding with his FTO, Officer Tijerina. (RR 3, 89). He went to a trailer park that night, sometime between 10:40 and 11:00. The caller said his sister was arguing with another person. All three officers made contact at the same time. (RR 3, 91).

9

They all arrived in marked patrol cars. Saul Anguiano was waiting for them. He said that an argument was going on inside the trailer. (RR 3, 92-93). The victim was Mr. Anguiano's sister. Officer Figueroa could hear yelling inside the trailer. (RR 3, 93). The three officers entered the residence. Mr. Garza-Ramirez was yelling. He had the victim cornered against the kitchen counter, with his back toward the officers. Officer Figueroa said, "Sir," to get his attention, and Mr. Garza-Ramirez looked back and saw the officers. (RR 3, 94).

Mr. Garza-Ramirez continued to yell at the lady. The officers approached him. (RR 3, 93-94). The lady was Nicole Casimiro. She was yelling and trembling. Her face was red. She was trying to back up, but she was cornered. (RR 3, 95). She did not appear to be the aggressor. When Officer Figueroa told him to move back, Mr. Garza-Ramirez cursed. He then gestured and said, "Vamos. Vamos." Officer Figueroa understood this to be a threat. (RR 3, 96). It translates to, "Let's go." (RR 3, 97). Idiomatically, Officer Figueroa interpreted it to mean, "Let's fight." He tried to grab Mr. Garza-Ramirez's arm, but Mr. Garza-Ramirez pulled away. The other officers grabbed at him and a struggle began. They were all standing up at first, but the officers brought him to the ground. Mr. Garza-Ramirez's chest was on the floor, but he was thrashing from side to side. He positioned his arms to prevent being cuffed. He kicked back with his legs. Officer Figueroa grabbed his arm to neutralize him and prevent a fight. (RR 3, 98).

Officer Figueroa repeatedly told Mr. Garza-Ramirez to put his arms behind his back, but he did not listen. (RR 3, 99). Officer Figueroa had to eventually punch him in the ribs with a closed fist. Even this did not cause compliance, and the officer grabbed Mr. Garza-Ramirez as a pressure point behind the jaw. This permitted the other officers to handcuff him. (RR 3, 100). After Mr. Garza-Ramirez was secured, the officers brought him outside, and Officer Figueroa interviewed Ms. Casimiro and Mr. Anguiano. (RR 3, 101).

Ms. Casimiro looked shaken. She was not crying, but she was trembling. She looked scared. She told the officers that she was afraid that Mr. Garza-Ramirez would become aggressive again. She had scratches on her face. (RR 3, 102). She said the Mr. Garza-Ramirez punched her in the face and pushed her face against the stove. (RR 3, 103). Once she was cornered, he punched her multiple times to the face and body. He hit her on the teeth, causing him to have a gash. (RR 3, 104). Officer Figueroa's interview with Ms. Casimiro was recorded on the audio track of the COBAN video, and was played for the jury from 0:20:37. (RR 3, 106; RR 4, SX10 at 0:2037). The record does not say when the recording was stopped, but it almost certainly was not played beyond 0:29:31, when the audio track was muted.

Ms. Casimiro said that she and Mr. Garza-Ramirez lived together, but that he had not been there during the previous few days. They started arguing when he arrived that night. She went inside the trailer, and he kicked his way inside and

11

started yelling at her. He punched her and backed her into a corner. He head-butted her with his forehead and got cut himself. He had been drinking. (RR 3, 106-107).

**The conviction, punishment phase, and post-conviction proceedings.**

Following the close of evidence and argument of counsel, the jury convicted Mr. Garza-Ramirez of assault – bodily injury and resisting arrest. (CR 478490, 33; CR 478491, 33; RR 3, 148). Mr. Garza-Ramirez elected that the court assess punishment in case of conviction. (CR 478490, 34; CR 478491, 26). The trial court sentenced Mr. Garza-Ramirez in Cause No. 478490 to a $1,500 fine ($1,300 probated), plus one year in jail, probated for two years, with an affirmative finding of family violence. As a condition of probation, the court assessed a 30-day jail sentence. (CR, 478490, 35-36; RR 3, 154-155.) In Cause No. 478491, the court assessed no fine, and sentenced Mr. Garza-Ramirez to one year in jail probated for two years, both cases running concurrent. (CR 478491, 33-34; RR 3, 153). The trial court correctly certified that these are not plea bargained cases and that Mr. Garza-Ramirez has the right to appeal. (CR 478490, 37; CR 478491, 35). Mr. Garza-Ramirez timely filed notice of appeal. (CR 478490, 40; CR 478491, 38). The trial court appointed the Bexar County Public Defender's Office to represent Mr. Garza-Ramirez on appeal. (CR 478490, 41; CR 478491, 39). This appeal follows.

## Summary of the Argument

**First Point of Error.** The trial court granted a pre-trial motion in limine requesting to exclude an out-of-court statement by Saul Angiuno, who was not available to testify. During the testimony of Mr. Anguiano's sister, the parties approached the bench and had a hearing on the admissibility of the proposed testimony, which defense counsel proffered. The particular statement which the court excluded on hearsay grounds was, "Tell that bitch to give you more money." This statement was not hearsay, in that it was not offered for the truth of the matter asserted. The statement was not hearsay, but was relevant, and the trial court erred in excluding that part of Ms. Casimiro's testimony.

**Second Point of Error.** The same motion in limine sought to exclude evidence that Ms. Casimiro was bi-polar and was not taking her prescribed medications that night. The trial court denied the motion in limine, but excluded the evidence on Rule 403 grounds following an objection during the trial. This evidence was admissible because its probative value was not substantially outweighed by the danger of unfair prejudice. The evidence was relevant and important to the defense.

**Third Point of Error.** Mr. Garza-Ramirez requested a jury instruction on consent as a defense to assaultive conduct. The trial court denied the request. The

court erred in doing so, because the evidence raised the issue, counsel did not waive his request, and Mr. Garza-Ramirez suffered some harm.

## Argument

## Appellant's First Point of Error (Restated)

The trial court erred when it sustained the State's objections and denied Mr. Garza-Ramirez's request to present Saul Anguiano's out-of-court statement to his sister, because the statement was not hearsay and was relevant to the defense. (RR 3, 48).

**The motions in limine.**

Prior to trial, the State filed identical motions in limine in each case. Among other things, the motions sought to exclude "Any mention of previous or ongoing discussions or altercations with the Defendant and Complainant's family members and neighbors or continuous problems the Defendant and Complainant had with their family members and neighbors." (CR 478490, 12-16; CR 478491, 18-22). A pre-trial hearing was held on the motions. (RR 3, 5-8). The hearing specifically addressed family "problems" and "altercations." The State's attorney stated that Ms. Casirmiro's brother, Mr. Anguiano, was not available to testify. The trial court granted that part of the motion. (RR 3, 6).

**The hearing and proffer during the trial.**

During the trial, when defense counsel was cross-examining Ms. Casimiro, he asked to approach the bench. (RR 3, 46). Counsel for Mr. Garza-Ramirez explained that Mr. Anguiano was a "big missing part" of the problem in this household, and that he called the police because of his "bias and motive for causing problems." Counsel proffered that Mr. Anguiano asked his sister to

15

permanently remove Mr. Garza-Ramirez from the home so that Mr. Anguiano and his wife could stay there. The Anguiano family had been living in the trailer for four months, although they were initially supposed to be there for a couple of weeks. Counsel proffered that Nicole would testify about this, and the fact that Mr. Anguiano and his wife were still there caused friction between Mr. Anguiano and Mr. Garza-Ramirez. Ms. Casimiro would testify that her brother saw this altercation as a means of removing Mr. Garza-Ramirez from the home. Specifically, Mr. Anguiano told his sister, while they were in the yard of the trailer, to "tell that bitch [i.e., Mr. Garza-Ramirez] to give you more money." (RR 3, 47).

The State objected that this was hearsay and that the defense could not impeach an unavailable witness. Furthermore, the State argued that the evidence was irrelevant and prejudicial. Defense counsel responded that he was not offering the evidence for the truth of the matter asserted, and that it was therefore not hearsay. The trial court ruled against the defense by saying, "I'm not going to let you get into it." (RR 3, 48).

**Standard of review.**

An appellate court reviews a trial court's ruling excluding evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A court abuses its discretion when its ruling lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App.

16

2010). The determination of whether an out-of-court statement is hearsay is within the trial court's discretion. *Martinez v. State*, 186 S.W.3d 59, 67 (Tex. App. – Houston [1st Dist.] 2005, pet. ref'd).

Error may not be predicated on a ruling which excludes evidence unless a substantial right of the party is affected, and an offer of proof of the substance of the excluded evidence is made. TEX. R. EVID. 103(a)(2) (West. 2015). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d) (West 2015). Hearsay generally is not admissible at trial, subject to exceptions. TEX. R. EVID. 802 (West 2015).

**Hearsay.**

A statement not offered to prove the truth of the matter asserted is not hearsay. *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999). If the statement is offered for some other reason, it is not hearsay. *Martinez v. State*, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000). In other words, an extrajudicial statement offered for the purpose of what was said, rather than for the truth of what was said, is not hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995).

**Mr. Anguiano's statement was not hearsay and was admissible.**

"Tell that bitch to give you more money." This sentence is not subject to being interpreted as being either true or false. Rather, it is an expression of Mr. Anguiano's anger at Mr. Garza-Ramirez. This statement was offered for the purpose of exposing what Mr. Anguiano's motives and biases were, not for the purpose of showing that Mr. Garza-Ramirez was a stingy "bitch." Through further testimony, as proffered by the defense, the statement gets to the heart of Mr. Anguiano's real reason for calling the police on Mr. Garza-Ramirez. He wanted Mr. Garza-Ramirez out of the house, and he used a handy excuse, the three-way fight, as a reason for calling the police. He was biased against Mr. Garza-Ramirez and wanted him gone. Because the statement was not hearsay, it was admissible, if relevant. TEX. R. EVID. 402 (West 2015). It is relevant to this case, in that it makes Ms. Casimiro's testimony that this was mutual combat in which she threw the first punch more probable than it would otherwise have been. TEX. R. EVID. 401 (West 2015). The trial thus court erred when it excluded the evidence.

**Harm analysis.**

The exclusion of evidence by a trial court is non-constitutional error, unless it completely denies the defendant the right to present a defense, which was not the case here. *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002). Pursuant to TEX. R. APP. P. 44.2(b) (West 2015), the error should be disregarded if it does not

affect the substantial rights of the defendant. Substantial rights are not affected "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). This Honorable Court cannot have such assurance in this case. Had the trial court permitted the excluded evidence, the jury would likely have concluded that Ms. Casimiro was telling the truth when she testified that that this was mutual combat, which relates to the assault case, and when she testified that Mr. Garza-Ramirez was not resisting arrest but was simply reacting to pain caused by injury to his dislocated shoulder, which relates to the resisting arrest case. This Honorable Court should therefore reverse the judgments of conviction in both cases and order a new trial.

### Appellant's Second Point of Error (Restated)

The trial court erred when it sustained the State's objections to testimony from Nicole Casimiro that she was bi-polar and was not on medication, because the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. (RR 3, 57-58).

**The motion in limine.**

The same motions in limine of the State discussed in Appellant's First Point of Error sought to exclude "Any mention of the Defendant, Complainant, or Witnesses having been placed in a mental or psychiatric facility or institution,

19

under treatment or medications for any mental or psychiatric condition." (CR, 478490, 12-15; CR 478491, 18-22). At the pre-trail hearing on the motions, defense counsel advised the court that Ms. Casimiro was bi-polar and not on prescribed medications. He argued that this was relevant because "she will say that it affected her behavior." (RR 3, 7). The court denied to grant that portion of the motions, but said that the State could "make any objections when they felt appropriate." (RR 3, 8).

**The questions and proffered evidence.**

During the trial, in re-cross examination of Ms. Casimiro, defense counsel began his examination as follows:

Q.    Is it fair to say that you were extremely upset that evening?

A.    Yes.

Q.    Would it also be fair to say that you may not have been thinking completely clearly?

A.    Yes.

Q,    Have you – have you been treated for any mental issues?

MR. APPLEBAUM:    Your Honor, I'm going to object as to relevance.

(RR 3, 54-55).

The court excused the jury, and the parties argued their positions. The court asked defense counsel to explain the relevance of his questions. Counsel proffered that it was relevant because some of the information Ms. Casimiro may have given

to the police could have been "taken wrong by her" because she was diagnosed as bi-polar, had been prescribed psychotropic medications, but that she was off the medications on the day of the fight. "It could very well have affected her propensity to exacerbate and aggravate the situation, to basically kind of create an emotional synergy between the three participants in this case …." She would have testified that, had she been on her prescribed medications, she might have remained calmer when Mr. Garza-Ramirez arrived intoxicated. She would have testified that this was a factor in the situation spiraling out of control, and it led to her signing documents for the police before completing them. (RR 3, 56-57). The court sustained the State's objection. (RR 3, 57). As a postscript, the court added: "Also, with respect to your request, I find under 403 that I'm sustaining the objection." (RR 3, 58).

**Rule 403.**

TEX. R. EVID. 403 (West 2015) provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Admission of evidence over a Rule 403 objection is reviewed on an abuse of discretion standard. *Smith v. State*, 355 S.W.3d 138, 153 (Tex. App. – Houston [1st Dist.] 2011, pet. ref'd)(citing *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005)). Evidence is relevant if it has any tendency to make the

21

existence of a fact of consequence to the determination of the action more or less probable than it would be without the evidence. *Id.*; TEX. R. EVID. 401 (West 2015). There is a presumption of admissibility of relevant evidence. *Smith*, 355 S.W.3d at 153. When a court balances the probative value of the evidence against the danger of unfair prejudice, there is a presumption in favor of the probative value of the evidence. *Id.* at 154 (citing *Feldman v. State*, 71 S.W.3d 738, 754-55 (Tex. Crim. App. 2002)). The relevant factors to be considered are: (1) the probative value of the evidence, (2) the potential of the evidence to impress the jury in an irrational but nevertheless indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Id.* (citing *Mechler*, 153 S.W.3d at 440-41)).

**Application.**

Since the trial court excluded the evidence under Rule 403, and that rule applies to relevant evidence, it can be presumed that the trial court implicitly found the evidence proffered to be relevant, and therefore overruled the relevance objection and excluded the evidence on grounds other than relevance. Analysis of the four factors stated above show that the trial court erred in excluding this evidence, because its presumptive admissibility was not defeated.

The **probative value** of the evidence was that is cast doubt on Ms. Casimiro's ability to think clearly on the night in question. That was so for several

reasons, not the least of which was that she was not taking her prescribed psychotropic medications, and would likely testify that this negatively impacted her ability to think clearly. When added to the obvious stress of the moment, there is a cumulative failure of clear thinking. One manifestation of this was the fact that Mr. Casimiro could not complete her handwritten police statement. (RR 4, SX1). Ms. Casimiro's state of mind during what she described as mutual combat has high probative value in the assault case, if not in the resisting arrest case.

This evidence does not have great **potential to irrationally and indelibly impress the jury.** It simply goes to Ms. Casamiro's state of mind that night, and gives a completely rational explanation of what her state of mind was and why it was so. Indeed, the State did not even object until after Mr. Casimiro said that she was not thinking completely rationally. (RR 3, 54). It was therefore proper – and logical – for the jury to hear the complete story as to why she was not thinking rationally. Certainly, the presentation of the evidence would not have required more **time** than the hearing on the objection required. Furthermore, Mr. Garza-Ramirez had a real **need** for the jury to understand Ms. Casimiro's thought processes that night, and why her written statement to the police, which was incomplete, would appear to implicate Mr. Garza-Ramirez as an aggressor in what was in realty a three-way mutual combat.

**Harm analysis.**

As in the First Point of Error, this is non-constitutional error analyzed under TEX. R. APP. P. 44.2(b) (West 2015). While the error in the First Point implicates both convictions, the error here implicates only the assault case. This Honorable Court cannot have fair assurance that the error did not influence the jury, or had only a slight effect. It is likely that the jury might have given more credibility to Ms. Casimiro's testimony that she was not thinking clearly and was rushed into signing an incomplete and misleading police report had it known why she was not thinking clearly that night. The trial court erred when it sustained the State's objection. Mr. Garza-Ramirez is entitled to a new trial in the assault case.

## Appellant's Third Point of Error (Restated)

The trial court erred when it denied Mr. Garza-Ramirez's request for a jury instruction on the defense of consent, because the evidence raised a fact issue as to consent. (RR 3, 119).

During the charge conference, defense counsel requested a jury instruction on consent as a defense to assaultive conduct, under TEX. PENAL CODE § 22.06 (West 2011). Defense counsel read his proposed charge into the record, and additionally requested a definition of serious bodily injury under TEX. PENAL CODE § 1.07(46)(West 2011), because the defense is not available if the conduct

24

threatens or inflicts serious bodily injury. The trial court denied the requested charge. (RR 3, 115-120).

**Defense counsel utters the toxic phrase.**

Following a brief recess after the charge conference, the following occurred:

THE COURT:     Let's go ahead and get on the record. Both sides have been provided a copy of the Charge in each case.
State and defense, have you had an opportunity to review the Charge? And if so, do you have any objections?

MR. APPLEBAUM: The State has no objections.

MR. ORBELO: Defense has no objections, Your Honor. (RR 3, 20).

**"No objections" does not always mean no objections.**

"[W]hen assessing the meaning of an attorney's statement that he or she has 'no objection' in regard to a matter that may have been previously considered and ruled upon, courts should first ask whether 'the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal.' If, even after reviewing the whole record, it remains ambiguous whether waiver was intended, the court should resolve the ambiguity in favor of a finding of waiver." *Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015).

In this case, a review of the record as a whole shows that defense counsel had no intention of waiving his defense of consent. The issue was touched on

briefly in voir dire by the State's attorney, who said, "the bottom line is you cannot touch or hurt someone without their consent except if it is self-defense." (RR 2, 35). During the trial on the merits, the idea that Ms. Casimiro consented was basic to the defense. She testified on direct that she was hurt in the melee, but that it was a "mutual fight" between the three of them. (RR 3, 26). She said that she told the police that she struck the first blow. (RR 3, 31). On cross-examination by defense counsel, she said it was an "all-out mutual fight, so everyone was just pushing each other." (RR 3, 38).

Even after his purported waiver, defense counsel touched on the issue during final argument. He reminded the jury that the only person who testified who had actual knowledge of what happened was Ms. Casimiro. He argued that the State "tried to paint her as scared and all that, but she told you that she was whaling on him with her fists …." (RR 3, 136). Counsel went on to argue that before she had a chance to think clearly, Ms. Casimiro let the officers' "muscle help [her] out with the fight." However, on cool reflection, and under oath, she told the truth at trial. (RR 3, 136-137). Clearly, defense counsel had no intention of waiving his requested charge that the court denied.

**Jury instruction on consent.**

"The victim's effective consent or the actor's reasonable belief that the victim consented to the actor's conduct is a defense to assault if the conduct did not

threaten or inflict serious bodily injury." *Miller v. State*, 312 S.W.3d 209, 212 (Tex. App. – Houston [14th Dist.] 2010, pet. ref'd)(paraphrasing TEX. PENAL CODE § 22.06(a)(1) (West 2011)). The defendant has the right to an instruction on any offense raised by the evidence, whether the evidence is weak or strong, unimpeached or contradicted, and without regard to what the trial court thinks about the credibility of the evidence. *Id.* (citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). The jury, not the judge, decides credibility. *Id.* (citing *Woodfox v. State*, 742 S.W.2d 408, 409-10 (Tex. Crim.App. 1987)). The appellate court is concerned only about whether there was evidence to support the defense of consent, not whether the evidence is believable. *Id.*

In this case, there is at least some evidence, as summarized above, that this was mutual combat. Mutual combat invokes the issue of consent as a defense to assaultive conduct. *See id.* at 212-13; *Agbor v. State*, No. 02-12-00401-CR, 2013 Tex. App. LEXIS 5430 at *10-*11, 2013 WL 1830679 (Tex. App. – Fort Worth May 2, 2013, no pet.)(mem. op., not designated for publication).

**Harm.**

When a defendant properly objects to jury charge error at the trial level, "reversal is required unless the error is harmless." *Miller*, 312 S.W.3d at 214 (citing *Almanza v. State*, 724 S.W.2d 805, 806 (Tex. Crim. App. 1986)). All the defendant need show on appeal is that he suffered some harm. *Id.* Because a

reasonable juror might conclude that Ms. Casimiro consented of that Mr. Garza-Ramirez reasonably believed that she consented, he was entitled to the charge he requested. The trial court erred, and he is entitled to a new trial on the assault charge.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, the Appellant prays the Court of Appeals to uphold the points of error, reverse the judgments of conviction and remand this case for a new trial.

Respectfully submitted,

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender
Paul Elizondo Tower
101 W. Nueva St., Suite 370
San Antonio, Texas 78205
(210) 335-0701
FAX (210) 335-0707
mrobbins@bexar.org
Bar No. 16984600
ATTORNEY FOR APPELLANT

## Word Count Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(1) & (i)(2)(B) (West 2015), the word count, from the beginning of the Statement of Facts until, but excluding, the signature block, is 5,802. The total word count is 7,645. The Public Defender's Office uses Microsoft Word 2010.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Brief For Appellant has emailed to the Bexar County District Attorney's Office, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205, on November 19, 2015.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender