George Givens MILLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–08–00763–CR.

Court of Appeals of Texas, Houston (14th Dist.).

April 29, 2010.

David L. Singer, Houston, for appellant.

Lisa G. Porter, Houston, for state.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and SULLIVAN.

## SUBSTITUTE OPINION

KENT C. SULLIVAN, Justice.

We deny the State's motion for rehearing, withdraw our opinion issued February 18, 2010, and issue this substitute opinion in its place.

A jury convicted George Miller of assaulting his son, Givens Miller. *See* Tex. Penal Code Ann. § 22.01 (Vernon Supp. 2009). The jury sentenced him to one day in jail, probated for thirty days. On appeal, George contends the trial court erred in denying his request for a jury instruction on the defense of consent. Finding error, we reverse and remand this cause to the trial court for proceedings consistent with this opinion.

## I. BACKGROUND

Givens, an eighteen-year-old, 210–pound football player, had a disagreement with his parents after one of his high-school football games. During the disagreement, George took away Givens's cell phone and car keys. Thereafter, Givens repeatedly shouted expletives at his parents, such as "take your G.D. money and 'f' yourself with it." He then bowed up in close proximity to George and, in a threatening tone, taunted him, saying "What the 'f,' man. I'm going to—you going to hit me, man? Are you going to hit me? What the 'f,' man." [1]

George replied, "No, I'm not going to hit you," and shoved Givens away from him. At this point, Givens kicked and punched George in his side, and then, as Givens charged him, George punched Givens in the face. George threw two more punches, and the altercation ended.

After noticing Givens was bleeding from the mouth with several teeth loosened, George placed him in the car with his mother and asked her to take him to the hospital. George, a doctor, left to perform surgery at a different hospital. The police pulled Givens and his mother over on a routine traffic stop while they were on route. The police inquired about the son's condition, and Givens told them he had been struck by his father. The officers called E.M.S., and E.M.S. personnel drove Givens the remaining distance to the hospital. After investigation, George was charged with the misdemeanor offense of assaulting a family member.

At trial, Givens testified that at the time of the incident he "was all jazzed up" from the game and "in an aggressive mood." He acknowledged that his tone and conduct was threatening, and he testified that he "kind of wanted to hit [George]" and he "kind of wanted [George] to hit [him]." When he described the altercation, he tes-

---

1. In an affidavit filed with the trial court, Givens expanded on his provocation of his father. Givens swore that after his father took his phone and keys, he "got angry and said 'This is out of control[,]' ... 'F* * * you[,]' and some other inappropriate words to [his] father and mother." He also provoked his father, "Come on, hit me, go ahead and hit me." Givens also admitted "[he] instigated ... the situation" and described the altercation as a "fight," not an assault.

tified that they "were ... fighting" and the punches were thrown "in the heat of combat."

At the close of evidence, George objected to the jury charge because the court did not include an instruction on the defense of consent. The court denied his request for a consent instruction and overruled his objection. The jury convicted and sentenced him to one day in jail, probated for thirty days.

George contends the trial court erred by denying his request for an instruction on the defense of consent. Specifically, George argues that the underlying evidence raised a fact issue as to this defense. We agree.

## II. DISCUSSION

### A. Jury Instruction

■ The victim's effective consent or the actor's reasonable belief the victim consented to the actor's conduct is a defense to assault if the conduct did not threaten or inflict serious bodily injury. Tex. Penal Code Ann. § 22.06(a)(1) (Vernon 2003). An accused has the right to an instruction on any defense raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court thinks about the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim.App.1999). This rule was designed to ensure that the jury, not the judge, decides the credibility of the evidence. *Id.; see Woodfox v. State*, 742 S.W.2d 408, 409–10 (Tex.Crim.App.1987).

#### 1. Consent

■ The evidence supporting a consent defense may be presented by the State or defense counsel. *See Granger*, 3 S.W.3d at 38 n. 2; *Woodfox*, 742 S.W.2d at 409. When considering whether an instruction was warranted, we are concerned only with whether the evidence supports the defense of consent, not whether the evidence is believable. *See Dyson v. State*, 672 S.W.2d 460, 463 (Tex.Crim.App.1984). If the evidence, viewed in a light favorable to the appellant, supports the defense of consent, then an instruction is required. *See Granger*, 3 S.W.3d at 38; *Dyson*, 672 S.W.2d at 463.

The State urges us to follow *Allen v. State*, 253 S.W.3d 260 (Tex.Crim.App. 2008). In *Allen*, the complainant taunted the defendant by stating, " 'go ahead,' 'come on,' 'slap me,' 'hit me.' " *Allen*, 253 S.W.3d at 267. There the court stated, "[c]ommon experience tells us that such apparent bravado ... in the face of an expressed threat does not *normally* communicate a genuine desire to be assaulted; it far more likely constitutes a backhanded warning of potentially dire consequences to the threatener should she actually carry out her threat." *Id.* at 268 (emphasis added). However, the State fails to note that the *Allen* court ultimately concluded that the underlying facts were adequate to raise a fact issue relative to consent and require submission of the issue to the jury. There, the circumstances did not require reversal only because the defendant's counsel failed to preserve error. *Id.*

■ Here, the evidence indicates Givens may have genuinely desired to provoke his father to hit him. Givens's testimony that he "kind of wanted [George] to hit [him]" gives life to the argument that the fight was consensual. Additionally, Givens did more than threaten George; he struck the first blow. It is important to note that Givens was aggressively moving towards George when George finally hit Givens. Furthermore, Givens described the altercation with phrases indicative of mutual combat, not assault. He testified that he "was all jazzed up" and "in an aggressive

mood" and that when George hit him, they were "in the heat of combat" and "still fighting."

## 2. Serious Bodily Injury

The defense of consent is not available when the defendant threatens or inflicts "serious bodily injury." *See* § 22.06(a)(1). Serious bodily injury is "injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function" of a bodily organ. Tex. Penal Code Ann. § 1.07(a)(46) (Vernon Supp. 2009).

██ Texas courts have not been consistent as to what specific facts constitute serious bodily injury. *Hays v. State*, 480 S.W.2d 635, 637 (Tex.Crim.App.1972). Whether an injury constitutes serious bodily injury is determined on a case-by-case basis. *Moore v. State*, 739 S.W.2d 347, 349 (Tex.Crim.App.1987). When deciding whether the injury rises to the level of serious bodily injury, we consider the extent of injury at the time it was inflicted, not after the effects have been ameliorated or exacerbated by medical treatment. *Goodman v. State*, 710 S.W.2d 169, 170 (Tex.App.-Houston [14th Dist.] 1986, no pet.).

██ Here, Givens suffered dental fractures and loose teeth, but he lost no teeth. He also received two blows to the head, and he testified that he may have lost consciousness for a brief moment. However, he did not sustain memory loss. The emergency physician who treated Givens testified that a black-out could be the result of many things, including shock or surprise. He also testified no damage appeared on Givens's CAT scan. Nevertheless, the doctor testified that, because Givens lost consciousness, he likely suffered a mild concussion.

Some courts have concluded, on a case-by-case basis, that *loss* of teeth is a serious bodily injury in cases with and without other injuries. *See, e.g., Hatfield v. State*, 377 S.W.2d 647, 649 (Tex.Crim.App.1964); *Lenzy v. State*, 689 S.W.2d 305, 310 (Tex. App.-Amarillo 1985, no pet.). To date, courts have concluded that the *loosening* of teeth is a serious bodily injury only when accompanied by other serious injuries. *See, e.g., Hawkins v. State*, 115 Tex. Crim. 163, 29 S.W.2d 384, 386 (1930) (defendant struck complainant with an axe, crushed his nose flat, knocked four teeth loose, and pulled ears with pliers leaving a one and one-half inch incision behind ear); *Pitts v. State*, 742 S.W.2d 420, 422 (Tex. App.-Dallas 1987, no pet.) (profuse bleeding, misalignment of teeth, inability to breath normally, and fractured jawbone, cheekbone, orbital bones, and nasal bones).

██ Blows to the head, depending on the strength and repetitiveness of the blows, can, but do not always, constitute serious bodily injury. *See Sanchez v. State*, 543 S.W.2d 132, 134 (Tex.Crim.App. 1976); *Hays*, 480 S.W.2d at 637; *Gonzales v. State*, 191 S.W.3d 741, 753 (Tex.App.-Waco 2006); *Powell v. State*, 939 S.W.2d 713, 718 (Tex.App.-El Paso 1997, no pet.). Some courts have held that memory loss is sufficient to constitute serious bodily injury, while others have not. *See, e.g., Powell*, 939 S.W.2d at 718 (concussion that caused memory loss was sufficient); *Sanchez*, 543 S.W.2d at 134 (temporary amnesia, or a momentary loss of memory, was not sufficient).

Here, Givens's teeth were loosened, but not lost, and he may have had a mild concussion. The State did not specifically contend below that Givens's injuries constituted "serious bodily injury." Even had it done so, in light of current precedent, the question still would be a question of fact for the jury to decide. *See Allen*, 253

S.W.3d at 267; *Saxton v. State,* 804 S.W.2d 910, 913–14 (Tex.Crim.App.1991); *Gray v. State,* 128 Tex.Crim. 637, 82 S.W.2d 958, 959 (1935).[2]

Viewing the evidence in a light favorable to George, we hold an instruction on the defense of consent was required. *See Granger,* 3 S.W.3d at 38. Whether Givens actually consented was a question of fact for the jury. *See id.* Accordingly, the trial court erred in overruling George's objection and denying his request for an instruction on consent.

### B. Harmful Error

█ Where appellant properly objected to a jury charge error in the trial court, reversal is required unless the error is harmless. *Almanza v. State,* 724 S.W.2d 805, 806 (Tex.Crim.App.1986) (en banc). Here, George made a timely and proper objection. Therefore, he need only show he suffered some harm as a result of the error. *See id.*

█ To resolve whether George suffered harm, we consider the plausibility of the evidence raising the defense. *See id.* Here, under these very unusual circumstances, a reasonable factfinder might conclude that Givens consented to the fight, or that George reasonably believed he consented. Whether Givens actually consented, of course, is a question of fact for the jury. *See Allen,* 253 S.W.3d at 268.

Therefore, we conclude that failure to include the instruction on consent was harmful error, and we sustain Appellant's sole issue on appeal. *See Almanza,* 724 S.W.2d at 806.

### III. CONCLUSION

Having sustained appellant's sole issue, we reverse and remand this cause to the trial court for further proceedings consistent with this opinion.

---

**2.** The consent defense statute is unusual in that it seems to focus on outcome rather than only intent. *See* § 22.06(a)(1) ("The victim's effective consent ... is a defense ... if the conduct did not threaten or *inflict* serious bodily injury."). While focusing on the outcome works to distinguish simple assault from aggravated assault, it poses a problem when applied to consent. *See Landrian v. State,* 268 S.W.3d 532, 543 (Tex.Crim.App. 2008). Essentially, it can have the effect of disabling one's consent altogether. For instance, A & B, two grown men, consent to a fist fight. A, not intending to cause *serious* bodily injury, throws a punch breaking B's nose or knocking out B's tooth. Though A has played by the terms to which both parties consented, a jury could conceivably decide B's injury is a "serious bodily injury." In that case, A could be deprived of an otherwise legitimate defense of consent and, therefore, guilty of legal assault. Thus, under the statute, the same conduct, depending on outcome, could potentially produce two different legal results.