**AFFIRM; Opinion Filed January 23, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01318-CR

### ALFREDO ALMANZA ROMERO, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-80084-2018**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Reichek

Alfredo Almanza Romero appeals his conviction for aggravated assault causing serious

bodily injury while using or exhibiting a deadly weapon. Romero presents three issues contending

(1) the evidence is insufficient to support his conviction, (2) certain evidence admitted by the trial

court was cumulative and more prejudicial than probative, and (3) the trial court erred in refusing

to include an instruction on self-defense or mutual combat in the jury charge. We affirm the trial

court's judgment.

### Factual Background

Herminio Baltazar lived with his wife, Jazmin Garcia, and their four children in Princeton,

Texas. Early in 2016, Baltazar and Garcia began arguing and Garcia moved out, taking the

children with her. Garcia stated Baltazar never physically hurt her, but they simply had problems.

She and the children eventually moved in with Maricela Romero, a friend Garcia met at work. Appellant, who is Maricela's son, also lived in the house.

Garcia and Baltazar remained separated for a few months and, during that time, Garcia and appellant began dating. Baltazar would come to Maricela's house to pick up the children on Sundays, but Garcia stated Baltazar never had any conflicts with appellant. Baltazar testified that, since he and Garcia were separated, he had no problem with appellant dating Garcia and he was only interested in seeing his kids. He stated he generally did not even go into the house, but would send Garcia a text message and wait for the children outside.

Around August 2016, Garcia ended her relationship with appellant and moved back in with Baltazar. According to both Garcia and Baltazar, neither of them had any contact with appellant until over one year later. Garcia testified that, in September 2017, Appellant called her and asked if she remembered him. When she responded that she did, he asked if they could go get something to eat together and Garcia hung up.

A few weeks later, on October 6, 2017, Baltazar said he came home from drinking with friends after work, greeted the children, and went outside to smoke a cigarette. It was dark outside and he saw a car's headlights coming towards the house. Baltazar then heard his named being called and he recognized the voice as appellant's. As he stood up and stepped forward, Baltazar felt a strong blow to the back of his head and everything went dark.

Garcia testified she heard Baltazar come home from work, walk into the house, and then go back outside. When she looked out the door to confirm that Baltazar was home, she saw him sitting on the steps of the porch smoking a cigarette. After she walked back into the house, she heard someone call Baltazar's name followed by a loud blow. When she went outside to investigate, she saw Baltazar with blood on his face and skin hanging from his left armpit staggering towards the house. She also saw a car parked in the road that she did not recognize.

The only other person Garcia saw outside the house was a man standing close to Baltazar with a pipe in his hand and his back turned towards her. Garcia grabbed the man and, when he turned, she recognized it was appellant with a cap partially covering his face. Garcia stated that she and appellant struggled and he struck her in the arm with the pipe. During the struggle, Garcia's phone fell to the ground. When she went to pick up the phone to call 911, she saw a knife on the ground next to them. Garcia stated she recognized the pipe appellant was holding as coming from their yard, but she had never seen the knife before. Appellant then moved in a manner that made Garcia believe he was going to retrieve the knife.

At that point, Maricela and appellant's step-father came up to Garcia and appellant. Garcia asked them to help her get appellant under control and get him out of there. Baltazar testified he remembered his wife yelling at appellant's parents to take appellant away. Appellant and his parents left, but Garcia did not see if appellant got into the car with them. Appellant later sent a text message to Garcia stating "The last time you called me you said you still love me. Don't play with me."

Police officers investigating the scene of the assault found trails of blood by the house indicating Baltazar lost a lot of blood quickly. Detective Jonathan Fisher stated the evidence showed the assault occurred by the house and Baltazar stumbled away, eventually collapsing in the yard. The officers found the pipe Garcia testified appellant had been holding, but did not recover a knife. Officers also photographed a beer bottle that was found in the yard.

Detective Yesenia Lopez was called to Maricela's house to help translate between police officers and appellant's parents. Lopez testified that both Maricela and appellant's step-father had blood on their clothing. Maricela told Lopez that Baltazar had sent a text to appellant asking him to meet in a parking lot so Baltazar could "beat him up," but appellant had not gone. Maricela also told Lopez that Baltazar had once tried to run over her son with his car. Both parents said appellant

–3–

fled from Baltazar's house on foot and they thought he had gone to stay with friends in McKinney. A K9 unit was able to trace appellant's scent from Baltazar's house to a nearby construction site, but the trail ended there. Appellant was eventually found in Austin and arrested.

At trial, the trauma surgeon who treated Baltazar at the hospital, Dr. Elizabeth Kim, testified Baltazar suffered significant injuries from the assault that created a substantial risk of death. Baltazar's injuries included multiple stab wounds to his head, shoulder, abdomen, hip, chest, and under his arm. The stab wound to Baltazar's hip was a large, open wound exposing the muscle. The multiple lacerations in his chest created a "sucking chest wound" such that when Baltazar took a deep breath, air would go through his chest wall. The chest lacerations also resulted in a hole in Baltazar's heart and required removal of part of his lung. The stab wounds to Baltazar's abdomen exposed the contents of the abdomen and required removal of his spleen. Dr. Kim acknowledged that Baltazar's medical records showed a history of alcohol abuse and that his blood alcohol level on the night of the offense was high.

After hearing the evidence, the jury found appellant guilty of aggravated assault causing serious bodily injury as charged in the indictment. The jury further found that appellant used or exhibited a deadly weapon during commission of the offense. Following a hearing on punishment, the court sentenced appellant to twenty years in prison and ordered $28,000 in restitution be paid to Baltazar. This appeal followed.

**Analysis**

### I. Sufficiency of the Evidence

In his first issue, appellant contends the evidence is insufficient to support his conviction. Appellant argues the evidence shows only that he was present at the scene of the offense and there is no evidence to show he assaulted Baltazar with a deadly weapon. We disagree.

When reviewing a challenge to the legal sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether

–4–

a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). Each fact need not point directly and independently to the guilt of the appellant as long as the cumulative force of all the incriminating circumstances is enough to warrant conviction. *See Kennemur v. State*, 280 S.W.3d 305, 313 (Tex. App.—Amarillo 2008, pet. ref'd). Circumstantial evidence is as probative as direct evidence and can be sufficient alone to establish an accused's guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 20004). We review all of the evidence in the case regardless of whether it was erroneously admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Appellant argues that, because no one actually saw him stab Baltazar, and the knife he allegedly used was not recovered, the only evidence that he committed the assault was his mere presence at the scene. Appellant mischaracterizes the evidence. Although the State is required to prove the accused is the person who committed the crime charged beyond a reasonable doubt, identity may be proved by both direct and circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). For purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative and identity may be proven by inference alone. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).

In this case, the evidence showed Baltazar recognized appellant's voice calling his name immediately before he was attacked in the dark outside his home. When Garcia went outside the house to investigate a noise she heard, she saw Baltazar covered in blood from multiple stab wounds and appellant standing close by him. Appellant was wearing a cap that partially covered his face and had a pipe in his hand. A knife was on the ground nearby. After struggling with appellant, Garcia saw appellant move to pick up the knife. Appellant then left the scene with his parents, who were later discovered with blood on their clothing. After the assault, appellant fled to Austin and messaged Garcia about their relationship, asserting that she told him she still loved him.

The witnesses' accounts of what occurred on the night of the offense, including the fact that appellant was the only person seen with Baltazar immediately after the assault occurred and, at that time, he was holding a pipe and standing next to a knife, provide strong proof of appellant's guilt. These witness accounts, combined with other circumstances of guilt, such as the motive created by appellant's relationship with Garcia and his fleeing the scene of the offense, constitute sufficient evidence to support appellant's conviction. *See Ingerson v. State*, 559 S.W.3d 501, 510 (Tex. Crim. App. 2018) (motive and fleeing scene of crime are circumstances indicative of guilt). We resolve appellant's first issue against him.

## II. Evidentiary Objections

In his second issue, appellant contends the trial court erred in admitting evidence of Baltazar's injuries that was cumulative and more prejudicial than probative. Appellant argues the cumulative effect of the testimony of Dr. Kim, Detective Fisher, Garcia, and Baltazar about Baltazar's injuries, along with Baltazar's medical records and pictures of him at the scene "undoubtedly inflamed the passions of the jury." Appellant further argues the State used Dr. Kim's testimony regarding Baltazar's treatment to inflame the passions of the jury resulting in the

medical evidence being used to establish culpability rather than merely the seriousness of the injuries. As noted by the State, appellant failed to raise any of these objections at trial. The only evidence to which appellant objected was five photographs taken of Baltazar lying on the ground at the scene of the offense. With respect to the admission of those photographs, appellant stated "we would object on the grounds of 403, and more than one is cumulative." The trial court overruled this objection.

To preserve a complaint for appellate review, a party must timely object and state the grounds for the objection with enough specificity to make the trial judge aware of the complaint, unless the specific grounds were apparent from the context. *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). The objection must be sufficiently clear to give the judge and opposing counsel an opportunity to address and, if necessary, correct the purported error. *Id*. If a trial objection does not comport with arguments on appeal, error has not been preserved. *Id*. A general "rule 403" objection does not give the trial judge any specific ground upon which to rule and does not preserve error. *Williams v. State*, 930 S.W.2d 898, 901 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

None of the arguments made by appellant in support of his second issue were raised by, or comport with, the objections he made at trial. The only objections appellant presented to the trial court involved a general "rule 403" objection directed at a few photographs from the night of the offense and a specific objection that those photographs were cumulative of each other. Because appellant's complaints on appeal are substantively different than his objections at trial, we conclude he failed to preserve error for review. We resolve appellant's second issue against him.

## III. Self-Defense and Mutual Combat Instructions

In his final issue, appellant contends the trial court erred in denying his request to include instructions on self-defense and "mutual combat" in the jury charge. A defendant is entitled to a

–7–

jury instruction on a defensive issue if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the witnesses. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). A trial court errs in denying the instruction if there is some evidence, from any source, when viewed in the light most favorable to the defendant, that will support the elements of the defense. *Id.* The evidence supporting the defense must be affirmative, however, and cannot be based on speculation or hypothetical "what if" scenarios.' *Krajcovic v. State*, 393 S.W.3d 282, 287 (Tex. Crim. App. 2013).

For a claim of self-defense, the evidence must show the defendant reasonably believed the use of force was "immediately necessary" to protect himself against the other's use of unlawful force. *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016). The only evidence appellant points to as supporting his request for a self-defense instruction is that witnesses saw a pipe and a beer bottle at the scene of the offense and Baltazar had been drinking earlier that night. But the evidence also showed the only person seen holding the pipe was appellant. Detective Fisher testified the beer bottle was not found in the area where the offense occurred and did not appear to be involved in the assault. Garcia testified that, immediately before the assault, Baltazar was simply sitting on the steps in front of the house smoking a cigarette. Baltazar testified appellant attacked him from behind. The record is devoid of any affirmative evidence that Baltazar attempted to use unlawful force against appellant that evening or that appellant reasonably believed his use of force against Baltazar was immediately necessary to protect himself. We conclude the trial court correctly denied appellant's request for a self-defense instruction. *See Krajcovic*, 393 S.W.3d at 287.

With respect to appellant's request for a "mutual combat" defensive instruction, the instruction may be given if there is some evidence to show the victim effectively consented to the

defendant's conduct, or the defendant reasonably believed the victim consented, and the conduct did not threaten or inflict serious bodily injury.[1] TEX. PENAL CODE ANN. § 22.06(a)(1); *Miller v. State*, 312 S.W.3d 209, 212 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). In this case, even if we assume there was some evidence that Baltazar consented to fight with appellant, or appellant reasonably believed Baltazar consented to fight with him, the evidence clearly shows that appellant's conduct inflicted serious bodily injury to Baltazar.[2] Because appellant's conduct resulted in serious bodily injury, the defense of "mutual combat" was not available to him. *See Miller*, 312 S.W.3d at 213. The trial court did not err in denying appellant's requested instruction.

Based on the foregoing, we resolve appellant's third issue against him. We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181318F.U05

---

[1] The defensive issue of "mutual combat" is codified in the penal code as "Consent as Defense to Assaultive Conduct." TEX. PENAL CODE ANN. § 22.06(a)(1); *Agbor v. State*, No. 02-12-00401-CR, 2013 WL 1830679, at *4 (Tex. App.—Fort Worth May 2, 2013, no pet.) (mem. op.) (not designated for publication).

[2] Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALFREDO ALMANZA ROMERO,
Appellant

No. 05-18-01318-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-80084-2018.
Opinion delivered by Justice Reichek.
Justices Pedersen, III and Carlyle
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of January, 2020.