

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00139-CR

---

JOSEPH BEBOUT WEST, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the County Court at Law No. 1
Gregg County, Texas
Trial Court No. 2024-1026

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

A Gregg County jury found Appellant, Joseph Bebout West, Jr., guilty of assault, family violence, and the trial court sentenced him to one year of incarceration. *See* TEX. PENAL CODE ANN § 22.01(a)(1). West argues that (1) the trial court abused its discretion by denying his motion for new trial on the basis that he was denied an unbiased jury, and (2) there was jury-charge error. Because we find that West forfeited his right to complain about the juror and that there was no jury-charge error, we affirm.

## I. Motion for New Trial

We "review[] a trial court's denial of a motion for new trial for an abuse of discretion." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). We will "revers[e] only if no reasonable view of the record could support the trial court's ruling." *Id.* This deferential standard of review requires us to "view the evidence in the light most favorable to the trial court's ruling." *Id.* "In determining whether the trial court abused its discretion, [we] must not substitute [our] own judgment for that of the trial court, and [we] must uphold the trial court's ruling if it is within the zone of reasonable disagreement." *Id.*; *Hicks v. State*, 606 S.W.3d 308, 314–15 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (citing *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014) ("We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." (quoting *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)))).

As our sister court in *Hicks* explained,

> The Sixth Amendment guarantees the assistance of counsel and the right to a trial before an impartial jury. *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim.

2

App. 2004); *Linnell v. State*, 935 S.W.[2]d 426, 428 (Tex. Crim. App. 1996); *see* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to have the Assistance of Counsel for his defence."). Part of this constitutional guarantee includes "adequate voir dire to identify unqualified jurors." *Franklin*, 138 S.W.3d at 354 (citing *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992)). The Court of Criminal Appeals has also "consistently held that essential to the Sixth Amendment guarantees of the assistance of counsel and trial before an impartial jury 'is the right to question veniremembers in order to intelligently exercise peremptory challenges and challenges for cause.'" *Id.* (quoting *Raby v. State*, 970 S.W.2d 1, 10 (Tex. Crim. App. 1998) (Baird, J., concurring and dissenting)). "The voir dire process is designed to insure, to the fullest extent possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it." *Armstrong v. State*, 897 S.W.2d 361, 363 (Tex. Crim. App. 1995) (per curiam).

*Hicks*, 606 S.W.3d at 315. The Houston court went on to explain,

With the exception of the second, third, and fourth challenges for cause listed in article 35.16—that the prospective juror has been convicted of misdemeanor theft or a felony; the prospective juror is under indictment or other accusation for misdemeanor theft or a felony; and the prospective juror is insane—the remaining challenges for cause are not absolute disqualifications. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (addressing article 35.16(a)(7), concerning prospective juror's service on grand jury that returned indictment against defendant); *Vera v. State*, 496 S.W.3d 293, 295 (Tex. App.—San Antonio 2016, pet. ref'd) ("With the exception of three specific grounds for disqualification, the disqualification grounds listed in article 35.16 may be waived."); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.19 (entitled "absolute disqualification" and providing that, even if parties agree, prospective juror may not be impaneled if subject to second, third, or fourth challenges listed in article 35.16). "All grounds for challenge for cause may be forfeited," and a challenge for cause "is forfeited if not made." *Webb*, 232 S.W.3d at 112. A party's failure to question the prospective jurors on that subject "constitutes a forfeiture of the right to complain thereafter." *Id.*; *Ex parte Perez*, 525 S.W.3d 325, 339 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (stating that "challenge to a juror based on a non-absolute disqualification, such as county residence, is a forfeitable right, not a waivable right" and all party has to do forfeit such challenge is "remain silent"); *Vera*, 496 S.W.3d at 295 ("[W]ith three exceptions not applicable here, the failure to make a timely objection to a juror's

> qualifications under article 35.16 waives the right to challenge those qualifications.").

*Hicks*, 606 S.W.3d at 316–17 (alteration in original).

"[D]efense counsel has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial and truthful." *Armstrong*, 897 S.W.2d at 363–64. Without defense counsel asking such questions, the juror did not withhold any information. *See Hicks*, 606 S.W.3d at 317; *Armstrong*, 897 S.W.2d at 364; *see also Franklin*, 138 S.W.3d at 355–56 ("Under Texas law, the defendant must show that the juror withheld material information during voir dire, and the information is withheld *despite due diligence exercised by the defendant.*" (emphasis added)); *Gonzales v. State*, 3 S.W.3d 915, 916–17 (Tex. Crim. App. 1999) (noting "that error occurs where 'a prejudiced or biased juror is selected *without fault or lack of diligence on the part of defense counsel*, such counsel acting in good faith on the juror's responses and having no knowledge of their inaccuracy'" (quoting *Brandon v. State*, 599 S.W.2d 567, 577 (Tex. Crim. App. 1979))); *White v. State*, 181 S.W.3d 514, 518 (Tex. App.—Texarkana 2005), *aff'd*, 225 S.W.3d 571 (Tex. Crim. App. 2007) (considering whether defense counsel "used due diligence in eliciting the withheld information omitted by the juror or jurors during voir dire").

"There is a 'necessity' that defense counsel 'ask during voir dire all of the relevant statutory questions to determine whether a juror may be disqualified.'" *Hicks*, 606 S.W.3d at 317–18 (quoting *Webb*, 232 S.W.3d at 113 (citing *Stillwell v. State*, 466 S.W.3d 908, 913 (Tex. App.—Fort Worth 2015, no pet.) ("stating that attorneys have duty 'to determine capability or fitness of the jurors during voir dire'"))). "During voir dire, counsel should specifically cover all

of the grounds for challenges for cause listed in article 35.16 before counsel 'could be held to have used due diligence in determining the applicable challenges for cause.'" *Id.* at 318 (quoting *Webb*, 232 S.W.3d at 114 (citing *Ashton v. State*, 526 S.W.3d 490, 497 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ("Defense counsel must also ask specific questions, and cannot rely on broad ones, to satisfy this due diligence obligation."))).

West argues that the trial court clearly abused its discretion in denying his motion for new trial after he presented evidence to the trial court that a member of the jury, juror number six, was the Mayor of the City of Longview, Texas. According to his argument, West believes that "the position of [M]ayor of the City of Longview is a State-enabled and sanctioned official, there remains with that official an inherent, *a priori*, interest, [i]n the State prevailing in the case."

As it pertains to the juror, during voir dire, defense counsel specifically called upon juror number six to inquire as to what area of law she worked in as an attorney, which was disclosed in her questionnaire. Defense counsel posed to the entire panel how many believed that "police officers like to have their opinions challenged"—to which defense counsel did not receive any response. Defense counsel also argues that the mayor should have responded when asked, "Who has the law-enforcement experience that works with police officers?" The State also posited whether any juror would have trouble considering the testimony of a police officer more or less credible than an average witness, to which juror number six did not respond.

Here, as in *Hicks*, there were no specific questions put forward by defense counsel that would have unveiled juror number six's position as Mayor of the City of Longview. Because

there were no questions that would have revealed her position as mayor, we cannot say that juror number six intentionally withheld that information. Furthermore, a challenge based on Article 35.16(a)(9) of the Texas Code of Criminal Procedure, "[t]hat the juror has a bias or prejudice in favor of or against the defendant,"[1] "must be raised to and addressed by the trial court before the jury is empaneled and sworn; otherwise, a party forfeits the right to complain of and to rely on those bases on appeal." *Dorsey v. State*, No. 12-25-00134-CR, 2026 WL 775871, at \*4 (Tex. App.—Tyler Mar. 18, 2026, no pet. h.) (mem. op., not designated for publication). We hold that the trial court did not abuse its discretion in denying West's motion for new trial. We overrule West's first issue.

## II. Jury Charge

In his second issue, West argues that "[t]here was *Almanza* error in the jury charge because ample evidence of a defensive issue" was presented. *See Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). "We review claims of jury charge error under the two pronged test set out in *Almanza v. State* . . . ." *Gomez v. State*, 459 S.W.3d 651, 660 (Tex. App.—Tyler 2015, pet. ref'd) (citing *Almanza*, 686 S.W.2d at 171 (op. on reh'g); *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd)). "We first determine whether error exists." *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Swearingen*, 270 S.W.3d at 808). "If error exists, we next evaluate the harm caused by the error." *Id.* (citing *Ngo*,

---

[1]*See* Tex. Code Crim. Proc. Ann. art. 35.16(a)(9).

6

175 S.W.3d at 743; *Swearingen*, 270 S.W.3d at 808). "The degree of harm required for reversal depends on whether that error was preserved in the trial court." *Id.* (citing *Kuhn*, 393 S.W.3d at 524). "[W]here no objection is made to charge error, reversal is required only if the error resulted in 'egregious harm.'" *Id.* (citing *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008)).

### A.     Consent Instruction

West argues on appeal that he was entitled to an instruction on consent in the jury charge. "The victim's effective consent or the actor's reasonable belief the victim consented to the actor's conduct is a defense to assault if the conduct did not threaten or inflict serious bodily injury." *Miller v. State*, 312 S.W.3d 209, 212 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (sub. op.) (citing TEX. PENAL CODE ANN. § 22.06(a)(1)). "An accused has the right to an instruction on any defense raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court thinks about the credibility of the evidence." *Id.* (citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999)). "This rule was designed to ensure that the jury, not the judge, decides the credibility of the evidence. *Id.* (citing *Granger*, 3 S.W.3d at 38; *Woodfox v. State*, 742 S.W.2d 408, 409–10 (Tex. Crim. App. 1987)).

"When considering whether an instruction was warranted, we are concerned only with whether the evidence supports the defense of consent, not whether the evidence is believable." *Id.* (citing *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984)). "If the evidence,

viewed in a light favorable to the appellant, supports the defense of consent, then an instruction is required." *Id.* (citing *Granger*, 3 S.W.3d at 38; *Dyson*, 672 S.W.2d at 463).

## B. Evidence of Consent

West and Jamey Bowen, the complainant, were in a romantic relationship for about ten years at the time of trial. Bowen testified that on March 17, 2024, she called the police to her home in Longview to report a physical altercation with West. Bowen explained that she and West got into an argument related to her missing wallet. West began yelling at her, and he got in her face and was "spitting." West then "shoved" Bowen onto the base of the bed, and she stated that she "tr[ied] to get away from him and fight with him." Bowen was unable to get up because West was pushing her back down and put a pillow over her face. Bowen stated that she knew she needed to "get out and get away from him." Bowen went into the garage and got into her vehicle, where she was able to call 9-1-1. Bowen also testified to prior times when West became physical with her by throwing things at her, pouring food on her, and pressing a fork "into [her] cheek."

On cross-examination, Bowen agreed that there were times when a possession of hers seemed to be missing, and she mistakenly accused West of taking or moving the items, only to later learn that they were misplaced and she would apologize. She also believed that West would take her things or allow others into their home to take or move her belongings. On the date of the underlying incident, Bowen stated that her wallet appeared to be missing. She admitted that it had just been misplaced and said that she apologized to West for getting upset about it being missing. Bowen agreed that she pushed West but explained that she pushed him out of her space

8

and was trying to get away from him. When asked if the argument only became physical after she pushed him, she disagreed and stated that West was "coming at [her], and he was over [her], yelling at [her] in [her] face, this close (indicating), spit coming out of his mouth, and doing what he's doing." Bowen also stated that she only pushed West because "he came at [her], yelling at [her], and pushing [her] down." On re-direct, Bowen stated that she had not "instigated any violence with" West. She "felt pinned in" by West and attempted to push past him to get away from the situation because she was worried for her safety. On re-cross examination, she disagreed with defense counsel's assertion that she had started the physical altercation, though she did agree that she "pushed him away" first.

## C.    Analysis

We must view the evidence in the light most favorable to West and determine whether there was any evidence to show that either (1) Bowen effectively consented to the assault, i.e., whether there was any evidence that Bowen assented in fact, either expressly or apparently; or (2) West reasonably believed that Bowen effectively consented. *See* TEX. PENAL CODE ANN. § 1.07 (Supp.), § 22.06(a). In support of his argument that an instruction on consent was required, West contends that there were "several times" that Bowen "admitted that she was the person who initiated the assaultive conduct when she pushed" West. The evidence supports that Bowen did, in fact, push West and possibly was the first to engage in physical contact. However, even in viewing the evidence in the light most favorable to West for a consent instruction, we cannot conclude that there was evidence that Bowen assented, expressly or impliedly, to the assaultive conduct of West, nor can we conclude that there was evidence that

9

West believed Bowen had consented. On these facts, specifically, we conclude that Bowen's actions in pushing West away, "at most, rose to the level of provocation and [could have] entitled [West] to a self-defense instruction." *See Nick v. State*, No. 12-24-00177-CR, 2025 WL 657293, at *7 (Tex. App.—Tyler Feb. 28, 2025, no pet.) (mem. op., not designated for publication) (citing *Garza-Ramirez v. State*, Nos. 04-15-00420-CR & 04-15-00421-CR, 2016 WL 1128277, at *3 (Tex. App.—San Antonio Mar. 23, 2016, no pet.) (mem. op., not designated for publication) ("holding that victim's testimony that she hit defendant and continued to hit him as they pushed each other was no evidence of consent and defendant was not entitled to consent instruction"); *Agbor v. State*, No. 02-12-00401-CR, 2013 WL 1830679, at *4 (Tex. App.— Fort Worth May 2, 2013, no pet.) (per curiam) (mem. op., not designated for publication) ("holding that when evidence showed 'bad blood' and history of verbal altercations between appellant and victim, and victim pushed Appellant's finger away during argument and struck appellant first, evidence supported instruction on self-defense but did not support instruction on consent"); *Skipper v. State*, No. 14-00-00484-CR, 2001 WL 893291, at *2 (Tex. App.—Houston [14th Dist.] Aug. 9, 2001, pet. ref'd) (not designated for publication) ("holding that when evidence showed that victim yelled, called appellant names, pushed him, and threw food at him, consent instruction was not required because 'victim's actions . . . rise to, at best, provocation, entitling appellant to a defensive instruction on self-defense, which he received'"); *Carlson v. State*, No. B14-92-00173-CR, 1994 WL 64940, at *1 (Tex. App.—Houston [14th Dist.] Mar. 3, 1994, no pet.) (not designated for publication) ("concluding that when evidence showed that victim initiated fight by throwing water on appellant and taking first swing, self-defense

10

instruction was required but consent instruction was not"); *but see Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008) ("holding that when victim taunted defendant by verbally encouraging defendant to strike her, evidence raised issue of consent and required submission of consent instruction to jury"); *Miller*, 312 S.W.3d at 212, 214 ("holding that when victim testified that he wanted to provoke defendant into striking him and victim struck first blow, consent instruction was required")). However, to receive a self-defense instruction submission, the defendant must admit to his illegal conduct, which West did not do. *See Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010)). "In sum, viewing the evidence in the light most favorable to [West], we conclude that because the evidence did not raise the defense of consent, the trial court [was not required] to instruct the jury regarding consent." *Nick*, 2025 WL 657293, at *7 (citing TEX. PENAL CODE ANN. §§ 2.03(c), 22.06(a)(1); *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007); *Harper v. State*, 508 S.W.3d 461, 465 (Tex. App.—Fort Worth 2015, pet. ref'd)). Accordingly, we overrule West's second issue.

## III.     Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     March 25, 2026
Date Decided:       April 27, 2026

Do Not Publish

11