

# NUMBER 13-25-00551-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JAMAR MALCOLM ARCHIE,                                    Appellant,

v.

THE STATE OF TEXAS,                                         Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2
## OF MCLENNAN COUNTY, TEXAS

## OPINION

### Before Justices Silva, Peña, and Fonseca
### Opinion by Justice Fonseca

A jury convicted appellant Jamar Malcolm Archie of assault causing bodily injury, a Class A misdemeanor. *See* TEX. PENAL CODE § 22.01(a)(1), (b). Archie appeals his conviction based on two issues related to the court's charge to the jury. We affirm because the evidence did not support Archie's requested jury instruction and the trial court did not

err in charging the jury with the proper mental states for the charged offense.[1]

## I. BACKGROUND

On August 1, 2024, Archie was an inmate at the McLennan County Jail and slept in a bunk above Jamian Bishop in a group cell called a "tank." As seen in a video shown at trial, at around 4:12 a.m. on August 1, 2024, Archie was sleeping in his bunk when Bishop walked into frame and looked around the left side of the tank before touching something on the wall out of frame. Bishop then walked to the bed and briefly touched something on the top bunk before getting into the bottom bunk. At this point, Archie exited the top bunk and dressed while checking the same item on the top bunk that Bishop touched. Archie then stood over the bottom bunk and appeared to address Bishop before bending down and throwing multiple punches at him. They then grappled and Archie straddled Bishop. Eventually, other inmates approached the struggle before a uniformed guard appeared at the cell door and appeared to order everyone away.[2] Multiple guards then entered and broke up the fight.

On August 16, 2024, the McLennan County District Attorney's Office charged Archie by information with "intentionally, knowingly, and recklessly caus[ing] bodily injury" to Bishop. Following exchange of discovery and other pretrial motions, trial began on September 8, 2025. At the pretrial hearing, Archie's counsel argued that he should be allowed to present evidence of the history of Bishop and Archie's relationship, including their disciplinary actions in jail and their criminal history, to support a defense of consent.

---

[1] This appeal was transferred from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] The video did not have audio.

The State responded that a consent defense does not require any relationship history. The parties also agreed to admit the above-described video footage and other photos.

McLennan County Sherriff's Office (MCSO) Officer Christopher Dickerson worked at the jail and was on duty at the time of the incident. He testified he was patrolling when, upon hearing "a loud commotion," he went to the tank called "Charles Seven" and observed Archie on top of Bishop "in a clench." He did not see any punches thrown but stated Bishop could not defend himself and that Archie did not release Bishop until officers entered the area. He did hear Bishop say, "Get off of me so that we can fight." Dickerson stated Bishop was injured because of this incident. Outside the jury's presence, the parties argued as to whether Dickerson could testify as to Bishop's reputation for being aggressive and Archie stated he would seek a consent jury instruction based on this testimony. The trial court sustained the State's objection and did not allow this testimony.

MCSO Lieutenant Kristene Crockett testified she worked at the jail and, based on her experience in the jail system, that the prior-described video depicted Archie assaulting Bishop. In a recess from her testimony, the parties again argued whether Archie could question the officers regarding Bishop's reputation for violence to support the consent issue. Archie asserted Bishop's reputation helped support the concept that Bishop touching Archie's bunk constituted consent to a conflict. The trial court again sustained the State's objection. Crockett's testimony resumed and she stated she did not witness the incident and only reviewed the video.

After both sides rested, Archie argued for a consent defense jury charge instruction. The State argued that the only relevant trial evidence was Bishop telling Archie to get off of him so they could fight, and, as that statement was made after Archie

3

had already assaulted Bishop, it did not support the instruction. Archie responded that it was appropriate for the jury to decide the fact issue of consent. The trial court denied Archie's request and Archie objected.

Trial concluded on September 9, 2025, and the trial court delivered its charge to the jury. The charge instructed the jury to find Archie guilty of assault if he "intentionally, knowingly, or recklessly" hit Bishop. Archie objected to the use of "or" when the information used "and" as he argued that it improperly expanded "the means for the State to obtain a conviction." The trial court overruled this objection. Finally, the charge defined intentionally, knowingly, and recklessly for the jury.

The jury found Archie guilty as described above and this appeal followed.

## II.    ANALYSIS

Archie's appeal raises two issues, both related to the jury charge. We address each in turn.

### A.    Standard of Review

We review jury charge error in two steps, first determining whether error exists and then analyzing the error for harm. *Abad v. State*, 729 S.W.3d 108, 114 (Tex. App.—Houston [14th Dist.] 2025, no pet.). Because Archie timely objected to both alleged errors, reversal is required if we find error and there was some harm to him. *See id.* In assessing "some" harm, we review "(1) the entire jury charge, (2) the state of the evidence, (3) the jury arguments, and (4) if applicable, any other relevant information as revealed by the record as a whole." *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022).

### B.    Consent Jury Instruction

Archie first argues he was entitled to a jury instruction pursuant to Texas Penal

4

Code Section 22.06 and that the trial court's denial of this instruction was harmful error. Section 22.06 permits a defense to assaultive conduct if Bishop provided effective consent or if Archie had a reasonable belief that Bishop consented to Archie's conduct. *See* TEX. PENAL CODE § 22.06(a).

### 1. Relevant Law

"An accused has the right to an instruction on any defense raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court thinks about the credibility of the evidence." *Miller v. State*, 312 S.W.3d 209, 212 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999)). Evidence supporting a consent defense can "be presented by the State or defense counsel." *Id.* "When considering whether an instruction was warranted, we are concerned only with whether the evidence supports the defense of consent, not whether the evidence is believable. If the evidence, viewed in a light favorable to the appellant, supports the defense of consent, then an instruction is required." *Id.* (citation omitted). Further, if a party claims consent or "mutual combat" as a defense, "there must be evidence of an antecedent agreement to fight." *Davis v. State*, 533 S.W.3d 498, 514 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (quoting *Lujan v. State*, 430 S.W.2d 513, 514 (Tex. Crim. App. 1968)).

### 2. Discussion

Archie contends he was entitled to a consent instruction because (1) prior to the altercation Bishop was "interfering" with his personal items; (2) Archie tapped on Bishop "before the assault" to talk; (3) after the assault, Bishop uttered "get off of me so that we can fight"; and (4) Dickerson testified that he heard a verbal altercation prior to seeing

5

any physical contact between Bishop and Archie. Archie primarily relies on *Bufkin v. State* to support this argument wherein the victim testified the assaultive conduct at issue— "love bites"—was consensual and the court held the defendant was entitled to a consent instruction. 207 S.W.3d 779, 784 (Tex. Crim. App. 2006). Archie argues that, like in *Bufkin*, the trial court improperly denied an instruction providing the jury the ability to determine whether there was an alternative version of events for the same instance of conduct. *See id.*

Based on our review of the record evidence and relevant caselaw, we conclude that no evidence supported a consent instruction. Archie's primary evidence is that some discussion occurred before the assault and that Bishop was "interfering" with Archie's personal items. However, neither Archie nor Bishop testified and therefore the content of these alleged conversations is not in the record. While we are required to view the evidence in a light favorable to Archie and credit even weak evidence, the mere fact of conversations occurring without any other evidence of what was said constitutes no evidence of consent. *See Miller*, 312 S.W.3d at 212. Despite Archie's claims, *Bufkin* is not analogous because the victim in that matter directly testified that the conduct at issue was consensual, unlike here. *See* 207 S.W.3d at 784.

Further, mere "interference" with Archie's items likewise does not constitute consent to assault. Even belligerent conduct such as "yelling, name-calling, food-throwing, and pushing" has been found not to constitute consent for mutual combat. *See also Skipper v. State*, No. 14-00-00484-CR, 2001 WL 893291, at *2 (Tex. App.—Houston [14th Dist.] Aug. 9, 2001, pet. ref'd) (not designated for publication). Archie cites no authorities, nor have we found any, to suggest that merely offensive conduct equates

6

consent to assault. Rather, consent requires testimony or other evidence indicating a desire for combat, or an alleged victim striking the first blow or making other aggressive moves. *See Miller*, 312 S.W.3d at 212. The record here shows that Bishop was prone on his bed when Archie threw the first blow and did not testify that he wanted to engage in combat. *See id.*

Finally, Archie relies on the fact that Bishop stated a desire to fight after the assault began. However, the evidence necessary to claim a mutual combat defense requires an "*antecedent* agreement to fight." *Davis*, 533 S.W.3d at 514 (emphasis added). Therefore, any statement by Bishop after Archie already assaulted him cannot provide evidence of an antecedent agreement. *See id.*; *Miller*, 312 S.W.3d at 212; *Lujan*, 430 S.W.2d at 514.

Accordingly, we overrule Archie's first issue.

## C.    Mens Rea

In his second issue, Archie claims the trial court erred by charging the jury that he could be found guilty if it determined his actions were committed "intentionally, knowingly, *or* recklessly" while the information uses "and," and thus expanded the mental culpability from the information. "[J]ury charges are meant to inform the jury of how to apply the applicable law to the facts of the case." *Alkayyali v. State*, 713 S.W.3d 780, 790 (Tex. Crim. App. 2025) (citing *Alcoser v. State*, 663 S.W.3d 160, 164–65 (Tex. Crim. App. 2022)). "The charge 'must contain an accurate statement of the law and must set out all the essential elements of the offense.'" *Id.* (quoting *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012)).

Archie does not contend the charge contained an inaccurate statement of the law or failed to set out all of the offense's essential elements. Rather, he argues that because

7

the information altered the requisite findings as to the culpable mental state to a conjunctive, the trial court was required to ignore the statute and follow the law as set forth in the information. *See* TEX. PENAL CODE § 22.01(a)(1) (using the disjunctive "or" as to the required mental state). To support this argument, Archie cites caselaw regarding the State being bound to prove the particular crime it alleges in an indictment even if it was not the crime the State intended to charge. *See Delarosa v. State*, 677 S.W.3d 668, 677 (Tex. Crim. App. 2023).

However, this is not an instance of the State charging a different crime than intended, but, rather, a misstatement of the statute's required mental state for a particular crime. *See id.*; *see also* TEX. PENAL CODE § 22.01(a)(1). Regardless, the Texas Court of Criminal Appeals has held that even if "an indictment alleges differing methods . . . in the conjunctive, the jury may properly be charged in the disjunctive." *Saenz v. State*, 451 S.W.3d 388, 390 (Tex. Crim. App. 2014) (quoting *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004)); *see also Essien v. State*, No. 05-04-00401-CR, 2004 WL 2397119, at *2 (Tex. App.—Dallas Oct. 27, 2004, no pet.) (not designated for publication). This matter does not involve a charging instrument alleging different methods of committing an offense, but, if it did, it would still be acceptable under Texas law. *Kitchens*, 823 S.W.2d at 258. Therefore, the mere difference in mental states between the information and jury charge did not improperly expand the proof needed where the jury verdict was unanimous as it was here. *Id.* at 258 n.2; *see also Pizzo v. State*, 235 S.W.3d 711, 716 (Tex. Crim. App. 2007).

In fact, the San Antonio Court of Appeals addressed this exact scenario where the defendant was charged with "intentionally, knowingly *and* recklessly causing bodily injury

but the jury charge permitted the jury to find [the defendant] guilty if they determined that he intentionally, knowingly, *or* recklessly caused bodily injury." *See Riley v. State*, No. 04-01-00648-CR, 2002 WL 1285194, at *2 (Tex. App.—San Antonio June 12, 2002, no pet.) (not designated for publication). There, our sister court determined this complaint was without merit because "[t]he fact that an indictment alleges matters in the conjunctive and the charge requires proof in the disjunctive, does not constitute reversible error." *Id.* (quoting *Fox v. State*, 693 S.W.2d 593, 600 (Tex. App.—San Antonio 1985, no pet.)). While not precedential, we agree with our sister court's analysis and adopt it here.

Thus, we overrule Archie's second issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

YSMAEL D. FONSECA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
7th day of May, 2026.

9